NEVILLE CONSTRUCTION COMPANY, a partnership; Dennis J. Neville; and Donald L. Neville, Appellees,

v.

COOK PAINT AND VARNISH COMPANY, Appellant.

No. 81–1880.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1982.

Decided Feb. 24, 1982.

Timothy J. Pugh, argued, Boland, Mullin & Walsh, Omaha, Neb., for appellant.

R. Lawrence Purdy, argued, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for appellees.

Before BRIGHT and STEPHENSON, Circuit Judges and NANGLE, District Judge.[*]

BRIGHT, Circuit Judge.

Cook Paint and Varnish Company (Cook) appeals from a judgment entered upon a jury verdict awarding $80,000 in damages to Neville Construction Company (the Nevilles)[1] in this action based on negligence and breach of warranty. We affirm.

Cook contends that the trial court[2] erred in admitting evidence to establish express warranty and in submitting the express warranty issue to the jury. Cook also asserts that the court erred in instructing the jury that Cook's failure to test its product could provide the basis for a finding of negligence, and in refusing to declare a new trial on the ground that documents not in evidence were taken into the jury room during jury deliberations.

I. *Background.*

In 1962, Cook Paint and Varnish Company began marketing polyurethane foam insulation products under the brand name "Coro-foam." In the spring of 1970, Cook

---

[*] JOHN F. NANGLE, United States District Judge for the Eastern District of Missouri, sitting by designation.

[1.] Plaintiffs in this action included Neville Construction Company, a partnership, and Dennis J. Neville and Donald L. Neville, the members of the partnership.

[2.] The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

sold "Coro-foam 340" insulation to Thomas Kreis, who was in the business of selling and installing insulation. Shortly thereafter, Kreis contracted with the Nevilles to apply the Coro-foam insulation with a spray applicator to the inside walls and ceiling of the vehicle repair shop owned by the Nevilles.

Before making the sale, Kreis gave the Nevilles a brochure from Cook describing the properties of Coro-foam insulation. Kreis also conducted a demonstration to show the Nevilles flame retardant characteristics of the insulation. Neither Kreis nor the brochure from Cook indicated that the insulation should be covered by paneling or other building material.

On July 30, 1976, fire destroyed the Nevilles' building when sparks or a hot metal slag from a welder used in their vehicle repair shop ignited the Coro-foam insulation. The fire spread rapidly throughout the building destroying it in a matter of minutes.

The Nevilles instituted this action to recover the property loss they suffered as a result of the fire. The parties stipulated damages at $80,000, and the court submitted the case to the jury on theories of negligence and express warranty. The jury returned a verdict for the Nevilles in the amount of $60,000 on their negligence theory, having reduced the award by twenty-five percent because of the Nevilles' contributory negligence, and in the amount of $80,000 on their express warranty theory. Following entry of judgment for the Nevilles in the amount of $80,000, Cook Paint and Varnish Company moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. The court denied these motions and Cook appealed.

## II. *Discussion.*

### A. *Express Warranty.*

#### 1. *Secondary evidence.*

Cook contends that the trial court should not have permitted Dennis Neville to testify regarding the contents of Cook's brochure describing the characteristics of Coro-foam insulation. Neville testified that the fire destroyed the brochure supplied by Kreis. The Nevilles attempted to introduce a similar brochure distributed by Cook; however, the court sustained Cook's objection to admissibility of the brochure on the ground that the exhibit had not been included on the pretrial exhibit list. Dennis Neville then testified that Kreis had given him literature on Coro-foam insulation which he had glanced through before deciding to buy the insulation. Neville testified, over objection, that the literature described Coro-foam's fire retardance.

Cook maintains that Neville's testimony was not the best evidence to prove the contents of Cook's brochure. Cook contends that because the witness had identified a brochure similar to the one destroyed in the fire it was incumbent upon the Nevilles to introduce that brochure as a duplicate.

Cook's argument lacks merit. Because Cook successfully objected to the admission of the similar brochure, it now cannot complain that that document provided the only proper evidence of the contents of the brochure destroyed in the fire. Moreover, the Federal Rules of Evidence recognize no degrees of secondary evidence to prove the contents of a writing that has been lost or destroyed. *See United States v. Standing Soldier*, 538 F.2d 196, 203 n.8 (8th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976); Fed.R.Evid. 1004 advisory committee note. The court, therefore, properly admitted the testimony of Dennis Neville as secondary evidence of the contents of the brochure destroyed in the fire.

#### 2. *Submission of express warranty to jury.*

Cook next contends that the trial court should not have submitted the theory of express warranty to the jury. It asserts that the evidence submitted at trial failed to establish either an express warranty or its subsequent breach. We disagree.

In determining whether the court erred in submitting plaintiffs' express warranty theory to the jury, we must view the evidence in the light most favorable to the jury's verdict, and give the plaintiffs the benefit of all reasonable inferences that

may be drawn from the evidence. *See Dulin v. Circle F Industries, Inc.*, 558 F.2d 456, 466 (8th Cir. 1977); *Davis v. Burlington Northern, Inc.*, 541 F.2d 182, 186 (8th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 613 (1976); *Linn v. Garcia*, 531 F.2d 855, 858 (8th Cir. 1976). This court cannot disturb the jury's verdict unless it determines as a matter of law that the evidence failed to establish either the existence or breach of the express warranty.

■ Under Nebraska law, express warranties may be created by affirmation, promise, description, or sample.[3] Representations in a brochure can create an express warranty. *See Hawkins Construction Co. v. Matthews Co.*, 190 Neb. 546, 209 N.W.2d 643 (1973). Furthermore, a manufacturer of a product may be liable even though not in privity of contract with the purchaser. *Id.* at 654; *Sylvestri v. Warner & Swasey Co.*, 398 F.2d 598 (2d Cir. 1968).

■ The Nevilles maintain that an express warranty arose from the affirmation of Coro-foam 340's flame retardance in the Cook brochure they received from Kreis. The Nevilles assert that Cook breached this express warranty when the insulation caught fire and destroyed the building.

Because fire had destroyed the brochure, the Nevilles submitted oral testimony that they had received the brochure, and had glanced through it before purchasing the insulation from Thomas Kreis. Specifically, Dennis Neville testified that the brochure "told of its [the insulation's] fire retardance."

Cook contends that this testimony is insufficient to submit the issue of express warranty to the jury. Because Neville's testimony does not indicate what the brochure said regarding Coro-foam's fire retardance, Cook asserts the jury was permitted to speculate about Cook's actual representations of fire retardance.

We believe that Neville's testimony, along with other evidence, supports the jury's finding that Cook had created an express warranty of flame retardance. In addition to Neville's testimony regarding the contents of the brochure, Kerwin Meinert, the head of Cook's Coro-foam division, testified that Cook had distributed brochures describing the self-extinguishing and nonburning characteristics of its polyurethane insulation. The Nevilles introduced a copy of a 1962 brochure from Cook that referred to the flame retardant and self-extinguishing characteristics of one of its foam insulation products.[4]

Finally, the record indicates that Kreis demonstrated the fire retardant and self-extinguishing qualities of Coro-foam for the Nevilles, by briefly holding a lighted match

---

**3.** The Uniform Commercial Code, as adopted by Nebraska, provides:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty. [6 Neb.Rev.Stat. § 2–313 (Reissue 1980).]

**4.** The 1962 brochure contained the following statements:

C-FOAMS are formulated from a selected variety of polyethers and are available in either normal foams or *Completely Self-Extinguishing* Foams which carry the designation of C–FOAM S. E. The S. E. (Self-Extinguishing) Foams meet all established tests for self-extinguishing standards of ASTM and Underwriters. As demonstrated, the C–FOAM S. E. will resist burning from direct flame of a blow torch!

\*　\*　\*　\*　\*　\*

Flame Retardance—C· FOAM S. E. types have excellent self-extinguishing properties with absolutely no drip. Pass ASTM and Underwriters standards. (Normal C-FOAMS show characteristic Polyurethane Foam Flame Properties).

underneath a small piece of Coro-foam 340. Although the insulation burned when directly exposed to the match, the fire went out when Kreis removed the match.[5]

We believe this evidence was sufficient to permit the jury to find that Cook had represented to its customers that Coro-foam insulation contained a self-extinguishing characteristic as a flame retardant. The immediate spreading of the fire in the Nevilles' building established a basis for the jury to determine that this express warranty had been breached.

Cook, nevertheless, asserts that its brochure contained, at most, a limited express warranty of flame retardance. It points out that the demonstration conducted by Kreis was a simplified version of the American Society for Testing and Materials Test D–1692. Cook asserts that this test serves to verify that Coro-foam contains fire retardant chemicals. However, the Nevilles failed to introduce any evidence that the Coro-foam 340 insulation did not contain fire retardant chemicals and Cook maintains, therefore, that the Nevilles did not establish breach of the limited, express warranty. In essence, Cook asserts that the standards of the D–1692 test limited any express warranty of Coro-foam's flame retardance.

We reject Cook's interpretation of the warranty. In light of the evidence submitted on Cook's representations of flame retardance, the jury was entitled to consider these representations as an ordinary person would understand them and resolve any doubts about the warranty in favor of the buyer. *See McCormack v. Hankscraft Co.*, 278 Minn. 322, 154 N.W.2d 488, 498 (1967).

Moreover, Nebraska's version of the Uniform Commercial Code restricts the effect of language attempting to limit or negate an express warranty.

(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (Section 2–202) negation or limitation is inoperative to the extent that such construction is unreasonable. [6 Neb.Rev.Stat. § 2–316(1) (Reissue 1980).]

Cook would have its warranty of flame retardance qualified by the ratings for nonburning and self-extinguishing established in the D–1692 test. The Nevilles' expert witness, Dr. Brady Williamson, testified that wood and even dried newspaper would achieve a rating of nonburning or self-extinguishing under the D–1692 test. To construe the warranty created by the reference to flame retardance, as limited by ratings in the D–1692 test would effectively eliminate any warranty of flame retardance. Because the Nevilles lacked the expertise to appreciate the technical significance of this test, the construction of the warranty urged by Cook is unreasonable. Accordingly, the reference to the D–1692 test would be ineffective to limit the express warranty of flame retardance. *See* 6 Neb.Rev.Stat. § 2–316(1) (Reissue 1980).

Thus, we reject Cook's argument that the trial court erred by instructing the jury on express warranty as a basis for recovery.

### B. *Negligence Instructions.*

Cook also argues that the trial court erred in instructing the jury that it could find Cook negligent for failure to conduct tests to determine the flammability of Coro-foam insulation.

Counsel for Cook conceded at oral argument that he had not objected to the trial court's instruction on negligence or otherwise requested an instruction ruling out failure to conduct tests as a basis for negligence. Unless the court's instruction amounted to plain error, Cook may not raise this issue for the first time on appeal. *See Wright v. Farmers Co-op of Arkansas and Oklahoma*, 620 F.2d 694, 698–99 (8th Cir. 1980); Fed.R.Civ.P. 51. We cannot say the giving of the instruction constituted plain

---

**5.** Kreis testified that Cook had shown him the demonstration he conducted for the Nevilles when he attended a sales meeting in 1969.

error. Moreover, Cook has shown no prejudice inasmuch as its failure to test related in part to the Nevilles' negligence claim based on Cook's failure to warn of the insulation's flammability characteristics.

### C. Jury Misconduct.

█ Finally, Cook maintains that the trial court erred in refusing to order a new trial because of jury misconduct. During its deliberations, the jury had access to a copy of the Nevilles' complaint and a Bureau of Mines report on the fire hazards associated with use of urethane foam in mines, neither of which had been admitted as evidence. Upon learning of this, Cook moved for a new trial. The trial court determined that neither document prejudiced the defendant and accordingly denied Cook's motion for a new trial.

On appeal, Cook contends that prejudice should be presumed whenever the jury is exposed to extraneous material. *See Stiles v. Lawrie*, 211 F.2d 188, 190 (6th Cir. 1954). Courts have divided over the issue of whether to presume prejudice when extraneous materials reach the jury during deliberations. *Compare id. with Frazier v. Beard*, 201 F.Supp. 395, 396–97 (W.D.Va. 1962). In criminal cases, this court has ruled that the exposure of jurors to extraneous materials or communications raises a rebuttable presumption of prejudice. *See McDonnell v. United States*, 457 F.2d 1049, 1052 (8th Cir.), *cert. denied*, 409 U.S. 860, 93 S.Ct. 148, 34 L.Ed.2d 107 (1972); *Wheaton v. United States*, 133 F.2d 522, 527 (8th Cir. 1943). Although this court has not considered the issue, in the context of a civil case the Ninth Circuit has held that exposure of jurors to exhibits or reports not admitted into evidence calls for a new trial only if the documents are prejudicial to the unsuccessful party. *See Benna v. Reeder Flying Service, Inc.*, 578 F.2d 269, 271-72 (9th Cir. 1978).

In this case, the district court made a finding in its posttrial memorandum "that the documents were not of a character to be prejudicial[.]" The trial court noted that the Bureau of Mines' report "was kept out of evidence only because it was not listed on the exhibit list prior to trial and the signifi-

cant parts of the exhibit were orally testified to anyway." In addition, the court determined that references in the Nevilles' complaint to their strict liability claim, which the court had dismissed, did not prejudice Cook, because the jurors were not likely to accept assertions in a pleading over the court's instructions on the issues. Having observed the documents and all the evidence submitted, the trial court was in the best position to assess the possible prejudicial effect the documents may have had on the jury. From our examination of the documents in question and the record of the trial, we cannot conclude that the trial court erred in denying a new trial merely because the jury had access to these extraneous materials.

Accordingly, we affirm.