NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0197n.06
Filed: March 14, 2007

Case No. 05-5444

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ELIZABETH M. NELSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| CHRISTIAN BROTHERS UNIVERSITY, | ) | DISTRICT OF TENNESSEE |
| ET AL., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

BEFORE: BATCHELDER, MOORE, and BALDOCK,[*] Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Plaintiff-Appellant, Dr. Elizabeth Nelson ("Dr. Nelson"), appeals the jury's verdict in favor of the Defendants-Appellees on her Title IX retaliation claim against her employer, Christian Brothers University ("CBU" or "the University"), the school's then-President, Stanislaus Sobczyk ("Brother Stan"), and Louis Althaus ("Brother Louis"), the school's then-Vice-President of Academic Affairs. She appeals also the district court's order granting summary judgment to the Defendants on her claim for breach of contract. Because we find that the district court did not err in instructing the jury on the Title IX retaliation claim and that the jury's verdict is not against the weight of the evidence, and we further find that no genuine

---

[*]The Honorable Bobby R. Baldock, United States Circuit Judge for the United States Court of Appeals for the Tenth Circuit, sitting by designation.

issue of material fact remained for trial on the claim for breach of contract and the Defendants were entitled to judgment on that claim as a matter of law, we affirm.

## I.

On September 8, 2003, Dr. Nelson filed a complaint alleging, *inter alia*, that the Defendants created a hostile work and educational environment based on sex and failed to promote her because of a presentation that she made to the University Faculty Assembly regarding the school's policies and procedures concerning sexual assaults on campus. Dr. Nelson alleged that the Defendants denied her a promotion in retaliation for her exposing violations of federal and state campus crime-reporting requirements. She further alleged that the University breached her employment contract by improperly conducting the promotion review meeting in which her promotion was denied.

On January 10, 2005, the district court granted in part and denied in part the Defendants' motion for summary judgment. The court's order granted summary judgment regarding Dr. Nelson's claims pursuant to Title VII, the Tennessee Human Rights Act, and breach of contract, but denied summary judgment regarding Dr. Nelson's claims of sexual harassment, gender discrimination, retaliation under Title IX, and civil conspiracy. Dr. Nelson's case proceeded to jury trial on January 24, 2005, and at the close of Dr. Nelson's proof, the court granted the Defendants' motion for a directed verdict on the Title VII sexual harassment claim. On January 28, 2005, the jury returned a verdict in favor of the Defendants on all of the remaining issues. On February 4, 2005, Dr. Nelson filed a motion for a new trial, which the district court denied. This appeal followed.

## II.

Dr. Nelson is a female, tenured associate professor in CBU's Department of Behavioral Sciences. The University receives federal funding and is subject to Title IX. In the fall of 2002, Dr.

2

Nelson became aware that a University student claimed that in September of that year, she had been sexually assaulted on campus by a male classmate. The student did not immediately press criminal charges, but filed an official complaint with the Associate Vice-President with Student Life, and asked Dr. Nelson to help her in proceeding with the complaint. Dr. Nelson and the student went to the Student Life office to inquire about a disciplinary hearing. On October 25, 2002, the ten member student-faculty disciplinary committee unanimously found the alleged perpetrator not guilty. On October 28, 2002, the student appealed the committee's decision to Brother Stan, the then-President of the University, and on November 12, 2002, Brother Stan upheld the committee's ruling.

On February 6, 2003, Dr. Nelson presented a PowerPoint slide show to the Faculty Assembly. Her presentation focused on the University's sexual assault policies and procedures and their deficiencies – as she perceived them – and included information about the students involved in the alleged September rape incident and in another alleged on-campus sexual assault. Brother Stan met with several members of the faculty regarding Dr. Nelson's presentation, and questions were raised about Dr. Nelson's allegations and the appropriateness of her presentation. An affidavit provided by Brother Louis, then-Vice-President of Academic Affairs, states that he became aware that:

> there was information included in her Faculty Assembly presentation that was unsubstantiated and reflected poor academic research. She presented unsubstantiated information as "facts," failed to properly research her subject, and failed to qualify her statements. She claimed that a student who had been tried and found innocent of rape charges had moved to another state and "committed further sexual assault[s]." Dr. Nelson had no proof to support this allegation that the male student, tried and acquitted in Shelby County Criminal Court, had moved to another state and committed any assaults. Further, complaints were received by me from attendees at the Faculty Assembly presentation as to the explicit nature of the presentation and I am aware that faculty members were upset that the presentation was made in an unprofessional manner.

3

On February 28, 2003, Brother Stan and Brother Louis met with Dr. Nelson to discuss their concerns over her Faculty Assembly presentation. Brother Louis kept notes of that meeting and put them in Dr. Nelson's tenure file. Those notes indicate that the Brothers explained to Dr. Nelson:

> that the former student who had been found innocent in the Memphis court system had not been arrested for other crimes as she had claimed in the presentation. She was asked to give documentation for her assertions. In addition, Brother Stan explained to her that it is unprofessional and unethical to bring the two current students to trial before the Faculty Assembly after the Discipline Committee found no evidence of a sexual assault. He also explained that the whole campus would now be aware of the two students and their supposed immoral behavior . . . . [I]t was brought to her attention that case studies are to be done without revealing, even obliquely, personal names and facts. While she did not give the two students' names, the descriptions were adequate to make quite clear who the students are, at least to some of the faculty members present at the Faculty Assembly presentation. The Power Point slides were quite explicit and were upsetting to some of the faculty present, giving them concern to call upon the President to voice their displeasure.

The University's Rank and Tenure Committee, whose voting members comprised nine men and one woman, was scheduled to meet on March 7, 2003, to consider Dr. Nelson's request for promotion from Associate Professor to Professor. Brother Louis was a non-voting member of the Committee, and Kristen Pruit, the Dean of the School of Arts, was the sole female member of the Committee. The Committee voted 6-4 in favor of recommending Dr. Nelson for promotion. The only reasons given in opposition to her promotion mirrored those listed in Brother Louis's affidavit, namely, that "[t]here was discussion of her presentation on Sexual Assault at CBU, her lapse of professional judgment in presenting a case study of two current students, the quality of the research into the background of the case, and the failure in the confidentiality that the case deserved."

On March 12, 2003, Dr. Nelson received a letter from Brother Stan stating that her promotion had been denied due to the Committee's mixed recommendation. Dr. Nelson appealed the denial to the Faculty Review Committee. The five member Faculty Review Committee concluded that

4

Brother Stan's action in denying the promotion was not procedurally improper, but that "the procedure by which the Rank and Tenure Committee reached its decision on the basis of information that Dr. Nelson had not been previously informed would be presented to the Rank and Tenure Committee is a defective procedure, and that procedure should be changed." A letter from the Faculty Review Committee Chair, Dr. Carriere, suggests that the information that was improperly considered by the Rank and Tenure Committee included Dr. Nelson's imprudent presentation at the Faculty Assembly. According to Dr. Carriere, "[t]he Faculty Handbook, which the President continually notes in the Faculty Appointment Contract, is 'herewith incorporated by reference and made a part of this contract,' makes it quite clear that only information presented by the Dean, Department Chair, and the Faculty's response, can be used in decisions on advancement." Dr. Carriere's letter did not make reference to or quote the language of any specific Handbook provision.

In response to the Faculty Review Committee's findings, Willis Willey, Chairman of the University's Board of Trustees, discussed the matter with Brother Stan. In a letter responding to the Faculty Review Committee, Chairman Willey relied on the Faculty Review Committee's finding "that Brother President did not act 'in an inappropriate manner in denying promotion.'" Moreover, Chairman Willey concluded that "[w]ith the finding rendered by you and the Faculty Review Committee as peers, it was decided that no further action would be taken on this case for the 2003–2004 academic year."

Dr. Nelson raises three arguments on appeal: (1) the trial court's inclusion of an Employment at Will - Business Judgment jury instruction was fundamentally erroneous and allowed the jury to deliberate using the wrong legal standard; (2) the jury's verdict was against the weight of the evidence; and (3) the summary judgment in favor of the Defendants on the breach of contract claim

was inappropriate because the record had presented a genuine issue of material fact. Because these arguments lack merit, we AFFIRM the jury's verdict.

## III.

### A. THE JURY INSTRUCTION ON THE TITLE IX RETALIATION CLAIM

Dr. Nelson's complaint alleged that by failing to promote her the University had subjected her to an adverse employment action in retaliation for "her presentation to the Faculty Assembly, and [her] assisting one of the sexual assault victims in dealing with the administration, and [her] assisting the U.S. Department of Education's Office of Human Rights in its investigation of the complaint of one of the assault victims." Department of Education regulations prohibit retaliation against participants in Title IX investigations:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part.

34 C.F.R. 100.7(e).

In denying the Defendants' motion for summary judgment on this claim, the district court held that it was undisputed that Dr. Nelson's February 2003 presentation at least contributed to her not being promoted, and genuine issues of material fact existed as to whether the Defendants were aware of Dr. Nelson's participation in the Department of Education's investigation prior to the decision not to promote her. The court therefore allowed the issue to proceed to the jury inasmuch as the record "could support an inference that a causal connection existed between Plaintiff's purported Title IX activity and the University's decision not to promote her." The jury found in favor of the Defendants, and Dr. Nelson now challenges a portion of the court's jury instruction,

6

namely, the Employee at Will – Business Judgment instruction. The district court's instruction on the issue states:

> Under the law to be applied in this case, an employer, such as defendant . . . has the right to promote or not promote an employee, such as plaintiff . . . for a good reason, a bad reason, or no reason at all, as long as the decision not to promote is not motivated by the employee's protected Title IX activity. If you find that the defendant's decision to not promote the plaintiff in this case was not motivated by the plaintiff's alleged protected Title IX activity, then you must render a verdict for the defendant, even though you might feel that the defendant's actions were unreasonable, arbitrary, or unfair. You are not to focus on the soundness of the defendant's business judgment or to second guess its business decisions.

Dr. Nelson concedes that she did not object to this instruction at trial, and we therefore review the instruction for plain error. *See* Fed.R.Civ.Proc. 51(d)(2). *See also Jordan v. City of Cleveland*, 464 F.3d 584, 599 (6th Cir. 2006) ("[Appellant] concedes that it did not object to the instructions as required by Rule 51, so that Rule 51(d)(2) prescribes that our review is limited to determining whether the instruction constituted 'clear and prejudicial error' (*Chonich v. Wayne County Comm. Coll.*, 973 F.2d 1271, 1275 (6th Cir.1992))."). Dr. Nelson argues that it is plain error to allow a "jury to deliberate under an incorrect legal standard that affect[s] the core issue of the case and result[s] in prejudice." *Reynolds v. Green*, 184 F.3d 589, 594 (6th Cir. 1999).

Dr. Nelson contends that she had an employment contract with the University that calls for "certain specific procedures that must be followed in considering a faculty member for promotion," and therefore, the court's instruction that CBU "had the right to promote or not promote an employee, such as plaintiff Elizabeth Nelson, for a good reason, a bad reason, or no reason at all" was misleading to the jury. Dr. Nelson appears to argue that because there were procedures for CBU to follow in considering her promotion, the defendants' failure to follow those procedures demonstrates pretext. According to Dr. Nelson, because the jury instruction described an

7

employment at will rather than the contract under which she was employed, it was more difficult for the jury to find pretext.

Contrary to the implication in Dr. Nelson's brief, the district court did not instruct the jury only that CBU "had the right to promote or not promote an employee, such as plaintiff Elizabeth Nelson, for a good reason, a bad reason, or no reason at all." Review of the entire instruction reveals that this sentence in the instruction did not end there, but continued with the words "as long as the decision not to promote is not motivated by the employee's protected Title IX activity." As Dr. Nelson's brief concedes, "[t]he core issue in this case involves whether or not the defendants retaliated against Dr. Nelson by not promoting her." This instruction did not, as Dr. Nelson contends, permit the jury to deliberate under an incorrect standard that affected this issue, and we conclude that the instruction did not constitute plain error.

### B. THE WEIGHT OF THE EVIDENCE

Dr. Nelson contends that the district court erred in denying her motion for a new trial because the jury's verdict was against the clear weight of the evidence. She maintains that "the only real issue was whether or not the reason given for not promoting the Plaintiff was a pretext, and said reason was clearly invalid," and therefore, the jury could not reasonably have found in favor of the Defendants. We review a district court's denial of a motion for new trial for abuse of discretion. *See Holmes v. City of Massillon*, 78 F.3d 1041, 1045 (6th Cir. 1996).

Generally, courts have looked to Title VII, 42 U.S.C. §§ 2000e, as an analog for the legal standards in both Title IX discrimination and retaliation claims. *See Brown v. Hot, Sexy and Safer Prods, Inc.*, 68 F.3d 525, 540 (1st Cir. 1995) ("Because the relevant caselaw under Title IX is relatively sparse, we apply Title VII caselaw by analogy.") (discrimination claim); *Preston v.*

8

*Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206-07 (4th Cir. 1994) ("Title VII, and the judicial interpretation of it, provide a persuasive body of standards to which [the court] may look in shaping the contours of a private right of action under Title IX.") (retaliation claim); *Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 832 (10th Cir. 1993) (Title VII provides "the most appropriate analogue when defining Title IX's substantive standards.") (disparate impact claim) (citation omitted), *cert. denied*, 510 U.S. 1004 (1993); *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 896 (1st Cir. 1988) (Court "can draw upon the substantial body of case law under Title VII to assess the plaintiff's [Title IX claim].") (discrimination claim); *see also Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 248-49, 251 (2nd Cir. 1995) (discrimination and retaliation claims). Here, the district court instructed the jury to assess Dr. Nelson's Title IX claim using the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Whether Dr. Nelson established a *prima facie* case of Title IX discrimination is not at issue in this appeal. The appeal centers on whether the evidence supports the jury's conclusion that the Defendants articulated a legitimate non-discriminatory reason for failing to promote Dr. Nelson, and Dr. Nelson failed to demonstrate pretext.

Dr. Nelson argues that the only reason that the Rank and Tenure Committee gave for denying her promotion concerned her presentation at the Faculty Assembly, namely, activity protected under Title IX, and, therefore, "[g]iven that the sole reason given for not promoting Dr. Nelson was her protected activity opposing violations of Title IX, it suffices to say that the defendants did not give a non-retaliatory reason for denying Dr. Nelson's promotion." We disagree.

As the Defendants observe, the jury was entitled to draw its own inferences and reach its own conclusions based upon the evidence presented at trial. There was sufficient evidence in the record

for the jury to conclude that the Rank and Tenure Committee members were not upset that Dr. Nelson challenged the sexual assault policies at the school, but were dismayed by the way that she chose to challenge them. The record clearly demonstrates that faculty members were surprised by the lack of professional judgment that Dr. Nelson displayed in putting two current students on parade in a case study, effectively revealing their identities, raising false and unsubstantiated allegations about one student, and not presenting a fully researched position. Based upon the affidavits and the meeting notes of Brother Louis, it is clear that faculty and administration members believed that Dr. Nelson's presentation demonstrated a lack of scholarship and judgment, irrespective of any pending promotion. Dr. Nelson has neither acknowledged nor challenged the criticism leveled by her colleagues and, as the Defendants rightly note, she fails to perceive that it was not the *subject* of her Faculty Assembly presentation that elicited the adverse reaction from her peers, but the manner in which she chose to make her presentation. The jury, however, was entitled to – and did – draw that distinction, and sufficient evidence supports its decision.

The third step in this analysis required the jury to determine whether the plaintiff proved, by a preponderance of the evidence, that the non-retaliatory reason given by the defendant for the adverse employment action was merely a pretext for the real reason, which was unlawful retaliation. Dr. Nelson contends that the reason given for not promoting her was pretext, "primarily because the sole reason given was invalid." It is true that the Faculty Review Committee found that "the Rank and Tenure Committee's 6 to 4 vote 'in favor of promotion' for Dr. Beth Nelson had occurred as a result of a 'defective procedure' . . . . [because its] decision came as a result 'of information that Dr. Nelson had not been previously informed would be presented to the Rank and Tenure Committee.'" Dr. Nelson argues that because the Rank and Tenure Committee improperly considered her Faculty

10

Assembly presentation in violation of the Faculty Handbook, and because information about that presentation was presented to the Committee in violation of the Faculty Appointment Contract, the Faculty Presentation was an invalid reason for the denial of her request for promotion. Because the reason given was invalid, she argues, the reason was necessarily pretextual. Again, we disagree.

First, the ultimate decision on whether to promote Dr. Nelson rested with Brother Stan, who expressed concern about Dr. Nelson's presentation at the Faculty Assembly before there was ever a Rank and Tenure Committee report. Brother Stan met with Dr. Nelson and Brother Louis privately on February 28, 2003, and explained all of the reasons he thought that her presentation was unprofessional and improper. None of those reasons included concern over the protected subject matter of the lecture. The Rank and Tenure Committee's recommendation with regard to Dr. Nelson's promotion was precisely that – a recommendation – and, in fact, the Committee recommended in favor of her promotion. It was Brother Stan who decided that a 6-4 Committee vote was not enough to support promotion, and there is no evidence in the record that Brother Stan took a different view of candidates with the same or similar Committee votes. Dr. Nelson has not provided evidence that she was treated differently by the one who actually made the promotion decision.

Second, that the Rank and Tenure Committee may have violated the internal procedures for considering an applicant's promotion does not mean that the reason that they denied the promotion was a pretext aimed at disguising an unlawful retaliatory motive. This is precisely what the jury was able to weigh and determine. The question for the jury was not whether the school had erred in applying its own safeguards during the promotion vote, but whether the reasons actually given for the ultimate denial of promotion were a mere pretext for an unlawful retaliatory reason. Here, the

11

burden of proof clearly weighs against Dr. Nelson. She provided no evidence – beyond the fact that her offensive presentation may not have been properly before the Committee – to show that the concerns raised about that presentation were pretextual. Weighing all of the evidence at trial, the jury reasonably could have concluded from the testimony, the affidavits, and the slide show itself that the University was concerned about the quality and professionalism of Dr. Nelson's work and *not* that it was retaliating against her because of the subject matter of that presentation.

As we explained in *Strickland v. Owens Corning*, 142 F.3d 353, 357 (6th Cir. 1998), the district court "should deny the motion [for a new trial] if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." Here, the district court rightly recognized that the jury could reasonably reach these conclusions described above, and the court did not abuse its discretion in denying Dr. Nelson's motion for a new trial.

### C. THE BREACH OF CONTRACT CLAIM

Finally, Dr. Nelson appeals the order of the district court granting the Defendants' motion for summary judgment on her breach of contract claim. We review *de novo* an order granting summary judgment. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999). The court noted that Dr. Nelson's complaint did not allege any specific breach of contract, but claimed only that the Defendants acted in bad faith for not promoting her. In response to the Defendants' summary judgment motion, Dr. Nelson argued that the University breached a provision of the Faculty Handbook that had been incorporated into her employment contract, namely, the provision regarding the information that the Rank and Tenure Committee may consider in its consideration of a request

12

for promotion. The district court granted the Defendants' motion, holding that "[a]bsent evidence of the provision of the Faculty Handbook that Defendants purportedly breached, no reasonable jury could return a verdict for Plaintiff."

On appeal, Dr. Nelson argues that the Defendants' motion should have been denied because a genuine issue of fact remained for trial regarding whether the promotion procedures violated Dr. Nelson's employment contract, as evidenced by the letter from Dr. Carriere, chairman of the Faculty Review Committee, to Mr. Willey, chairman of the CBU Board of Trustees, expressing concern that the Committee had used "defective procedures" in violation of the Handbook rules that were incorporated into Dr. Nelson's contract. But Dr. Nelson entirely ignores the fact that it was her burden to prove that a genuine issue of fact remained for trial with regard to her claim of breach of contract. Although the district court had before it the letter to which Dr. Nelson refers, the court noted that the letter did not include a copy of or any reference to any section of the Handbook, and was, in any event, hearsay. We need not determine whether the district court's hearsay ruling is correct; we conclude that in the absence of the Handbook provision or provisions on which Dr. Nelson premises her claim of breach, the letter constitutes no more than a scintilla of evidence, which is not sufficient to permit a jury to find in her favor on the issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.")

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

13

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment in part and dissenting in part.** The parties presented only one issue for us to resolve regarding Dr. Nelson's breach of contract claim: whether the district court erred by concluding that Dr. Carriere's letter was inadmissible hearsay. It is clear that the district court erred. Dr. Carriere's letter was "offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," FED. R. EVID. 801(d)(2)(D), and was thus admissible non-hearsay. *Cf. Beck v. Haik*, 377 F.3d 624, 638-40 (6th Cir. 2004); *Carter v. Univ. of Toledo*, 349 F.3d 269, 272, 274-76 (6th Cir. 2003).

The majority sidesteps this issue, however, and goes out of its way to dispose of Dr. Nelson's claim. First, the majority faults Dr. Nelson for not submitting a copy of her contract, a condition which, however wise trial practice it might be, both the Federal Rules of Evidence and precedent make clear is not required. *See* FED. R. EVID. 1004(3); *Woods v. Lecureux*, 110 F.3d 1215, 1223 (6th Cir. 1997); *Backstrom v. Dornbrock*, No. 97-1840, 1998 WL 808239, at *2, *4 (6th Cir. Nov. 12, 1998) (unpublished opinion); *Neville Constr. Co. v. Cook Paint & Varnish Co.*, 671 F.2d 1107, 1110-11 (8th Cir. 1982). The majority then concludes that, without a copy of the contract, Dr. Carriere's letter was "no more than a scintilla of evidence" of the relevant contractual provisions. This conclusory assertion is unsupported and unsupportable. Dr. Carriere's letter stated: "The Faculty Handbook, which the President continually notes in the Faculty Appointment Contract, is 'herewith incorporated by reference and made a part of this contract,' makes it quite clear that only information presented by the Dean, Department Chair, and the Faculty's response, can be used in decisions on advancement." 3 Joint Appendix at 391. The majority somehow concludes that, without a copy of the relevant contract provisions, a reasonable jury could not conclude from Dr.

14

Carriere's letter that Dr. Nelson's contract required exactly what the letter said it did—"that only information presented by the Dean, Department Chair, and the Faculty's response, can be used in decisions on advancement." *Cf. Neville Constr. Co.*, 671 F.2d at 1110-11 (concluding that a witness's testimony could be used to prove the contents of a warranty contained in a destroyed brochure). Thus, it is improper simply to dispose of Dr. Nelson's breach of contract claim. I respectfully dissent.