Charles Edward COOK, Plaintiff–
Appellant,

v.

Louis CALDERA, Jr., Secretary,
Department of the Army,
Defendant–Appellee.

No. 01–5341.

United States Court of Appeals,
Sixth Circuit.

Aug. 19, 2002.

Before SILER, COLE and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff Charles E. Cook appeals from the memorandum opinion and order granting the summary judgment motion of Defendant Louis Caldera, Jr., then Secretary of United States Department of the Army, and dismissing Plaintiff's complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, as amended.[1] In his complaint, Plaintiff, a white male employed by the Department of the Army as a GS–09 flight simulator training instructor at Fort Campbell, Kentucky, alleges reverse discrimination on the basis of race and gender when he was not considered for the position of Equal Employment Opportunity [EEO] Specialist and retaliation for having opposed discriminatory practices on the base. For the reasons set forth below, we **AFFIRM** the district court's judgment.

## BACKGROUND

Plaintiff, a former serviceman with the Army, became a civilian employee of the Army at Fort Campbell in 1989 after being honorably discharged. With the exception of an eighteen month assignment in South Korea in the early 1990s, Plaintiff has worked as a GS–09 flight training instructor at Fort Campbell since his honorable discharge from the Army. In addition to his military service and civilian employment with the Army, Plaintiff received a Master's Degree in human relations and, on behalf of his union, has represented various individuals at Fort Campbell in disputes regarding the collective bargaining agreement, grievance procedures and EEO proceedings.

1. On May 29, 2001, Thomas E. White was sworn in as the Secretary of the Army. Pursuant to Fed. R.App. P. 43(c)(2), he is automatically substituted as the proper defendant in this case.

In his complaint, Plaintiff alleges reverse discrimination on the basis of race and gender because he was not considered for the position of Equal Employment Opportunity [EEO] Specialist and retaliation for having opposed discriminatory practices on the base when he was not considered for the position of flight simulation chief. As Defendant points out, Plaintiff's issues are three-fold: (1) he alleges that he was subjected to reverse discrimination on the basis of his race (white) and gender (male) during the initial consideration of the EEO Specialist position; (2) he alleges that he was retaliated against during the reconstructed process for selecting the EEO Specialist; and (3) he alleges he was further retaliated against in not being considered for other promotions.

The lawsuit arises from Plaintiff's application for the position as an EEO Specialist at Fort Campbell that was posted on October 29, 1993. After the Fort Campbell Civilian Personnel Officer (CPO) reviewed the applications, fifty applicants were referred to Ms. Dorothy Brooks, then the EEO manager at Fort Campbell, on December 3, 1993. Brooks, in turn, referred twelve of the fifty applicants to a three-member screening panel, which reviewed and interviewed each of the applicants and referred the top applicants to Brooks. However, before referring the applicants to the screening panel, Brooks eliminated all white male applicants from consideration. Eventually, the selection board recommended two applicants: Gloria Handley and Marion Robinson. Brooks then selected Handley for the EEO Specialist position.

In January of 1994, the Army found out that Brooks had eliminated all white male applicants from consideration in filling the EEO Specialist position. Thereafter, on March 25, 1994, the Garrison Commander, Colonel Thomas E. Skrodzki, appointed an investigating officer to probe into the allegation that Brooks had eliminated all white male candidates from consideration. Soon thereafter, on March 29, 1994, Plaintiff filed a formal complaint of discrimination with the Fort Campbell EEO office about Brooks' elimination of all white male applicants for the EEO Specialist position. As a result of the Army's investigation, Colonel Skrodzki nullified the original selection process on May 6, 1994 and ordered the reconstitution of the selection panel for the EEO Specialist position. In addition, Colonel Skrodzki directed that Brooks not participate in the reconstructed selection process. Thereafter, on May 17, 1994, based upon the results of the Army's investigation into the matter, Colonel Skrodzki recommended the removal of Brooks from her position as EEO manager and her discharge from Federal service.

As Defendant points out, each member of the reconstituted three-member panel was a supervisor at Fort Campbell ranked at the GS–12 level or above. Gertrude Colbert (a black female) was Chief of the Acquisition Division, Directorate of Contracting; Judith Hudson (a white female) was Chief of the Operations and Maintenance Division, Directorate of Public Works; and Joel Jenkins (a white male) was the Deputy Director of Personnel, Training and Mobilization, Operations. The panel was instructed "to develop criteria that the panel as a group wants to look for/at to determine those candidates who would warrant a possible interview or further consideration."

The reconstructed selection panel considered all fifty of the original candidates. Before conducting the interviews, the panel eliminated 36 applicants. Those who scored 39 or higher were interviewed. Because Plaintiff received a score of 35, he was eliminated from further consideration.

On appeal, Plaintiff contends that the primary reason that he was excluded from consideration by the reconstituted panel was based upon his inclusion of materials that he had prepared on behalf of an individual in an EEO action. With the individual's permission, Plaintiff included the EEO materials in response to a question about the applicant's understanding of EEO procedures and activities in order to demonstrate his "knowledge, skills and abilities" (KSA). According to each of the members of the reconstructed selection panel, the inclusion of these materials violated privacy act provisions and evinced a lack of understanding of the EEO process, and was the sole reason why Plaintiff was not given further consideration for the position. In reaching this determination, members of the reconstructed selection panel consulted with Robert Vail, who was the Civilian Personnel Director at the time, about whether Plaintiff's inclusion of the materials constituted a violation of the privacy act.

The record reflects that in making the selection for the EEO Specialist position, the three members of the reconstructed panel were not provided with the applicants' race, and none knew Plaintiff. After conducting interviews with the remaining applicants, the reconstructed selection panel recommended Marion Robinson, one of the two recommended applicants in the original selection process who was not selected by Brooks. This time, Samuel Johnson, the Deputy Commander, selected Robinson, and she assumed the position of EEO Specialist in August of 1994.

On September 29, 1995, Plaintiff commenced the instant civil action in the United States District Court for the Middle District of Tennessee against the Army, alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, as amended. Because Plaintiff's allegation that the reconstructed selection panel discriminated against him had not been part of his original EEO complaint dated March 29, 1994, it had not been administratively exhausted. The Army filed an answer on January 31, 1996, denying the allegations of the complaint. On February 20, 1996, Plaintiff filed an amended complaint in response to the Army's motion to dismiss the individual defendants. The district court issued an order on February 19, 1997, staying the case to allow Plaintiff the opportunity to exhaust his administrative remedies and to allow the Army to investigate his new allegations of discrimination.

Thereafter, Plaintiff filed four additional formal complaints of discrimination with the Fort Campbell EEO office on November 5, 1996, April 9, 1997, May 27, 1997 and August 25, 1997. On September 29, 1997, the Department of Defense's Office of Complaint Investigations (OCI) notified Plaintiff about its investigation into his complaints of discrimination and retaliation. Thereafter, on January 13, 1998, Plaintiff contacted the EEOC's office at Fort Campbell alleging that his supervisor, Carolyn VanBruggen, was illegally detailed and then promoted.

After an investigation, the OCI, in a report issued on January 28, 1998, concluded that Plaintiff had "no basis for his allegations" regarding Ms. VanBruggen. Eventually, on March 18, 1999, the Compliance and Complaints Review Agency of the EEOC (EEOCCRA) issued the Army's acceptance of the OCI's recommendation finding no discrimination.

Subsequently, the EEO officer at Fort Campbell dismissed allegations in Plaintiff's complaint that Ms. VanBruggen was placed in the position as chief of the Flight Simulation Branch without following established policy and procedures of the Merit Placement and Promotion Plan, and that

VanBruggen was detailed and promoted in violation of local regulations and the collective bargaining agreement. Plaintiff then appealed the EEO officer's decision to the EEOC, which issued a decision sustaining the dismissal of these allegations on August 4, 1999. Specifically, the EEOC's decision noted: "[Plaintiff] failed to demonstrate how [these] allegations ... caused him to suffer a harm or loss with respect to a term, condition or privilege of employment."

Plaintiff filed a second amended complaint on June 18, 1999. In response, Defendant filed a motion to dismiss or in the alternative a motion for summary judgment on July 31, 1999. Plaintiff responded to Defendant's motions on September 1, 1999, and Defendant filed a rebuttal on September 15, 1999. Thereafter, Plaintiff filed a third amended complaint on November 2, 1999, which the district court dismissed in granting Defendant's motion for summary judgment. Plaintiff filed a timely appeal from the district court's order on March 1, 2001.

## DISCUSSION

On appeal, Plaintiff contends that the district court erred in granting Defendant's motion for summary judgment. This Court reviews *de novo* a district court's order granting or denying a motion for summary judgment. *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir.1993). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To prevail on a motion for summary judgment, the moving party must demonstrate to the court that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Id.*

In this case, the district court did not err in granting summary judgment to the Secretary on Plaintiff's claim of racial and gender discrimination.

To prevail in a case alleging discrimination under Title VII, 42 U.S.C. § 2000e, a Plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A prima facie case may be proven by showing that an employer took an adverse employment action under circumstances that give rise to an inference of unlawful discrimination. *Beaven v. Commonwealth of Kentucky*, 783 F.2d 672, 675 (6th Cir.1986). A plaintiff may establish a prima facie case under a theory of disparate treatment. *Green*, 411 U.S. at 792; *Griggs v. Duke Power*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Under a disparate treatment theory, a plaintiff must show that he was subjected to different treatment because of his membership in a protected category.

Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to show some legitimate non-discriminatory reason for the adverse employment action. *Green*, 411 U.S. at 803; *Burdine*, 450 U.S. at 253–54. To do so, the employer must "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id.* at 255. If the employer presents such evidence and if it is accepted as true, then the court can conclude that a non-discriminatory reason existed. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,

113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once the employer makes this showing, then the burden shifts back to the plaintiff to demonstrate pretext. *Burdine,* 450 U.S. at 255. The plaintiff must show by a preponderance of the evidence that the employer's stated reason is merely a pretext for discrimination. *Id.* at 256. Pretext can be established by showing that the stated reasons for the employer's action had no basis in fact, or were not the actual reasons, or were insufficient to explain the failure to hire or promote the plaintiff. *See Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1390 (6th Cir.1993).

■ Plaintiff first alleges that the Army discriminated against him because of his race and sex when it refused to consider him for the EEO Specialist position in the original selection process.

To establish race or gender discrimination, a plaintiff must establish that: (1) he is part of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly-situated individuals who are not members of his protected class. *McDonnell Douglas,* 411 U.S. at 800–04; *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1166 (6th Cir.1996). In a case of "reverse discrimination," where the plaintiff does not belong to a historically-discriminated race or gender, a plaintiff must show that (1) background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority; and (2) the defendant treated differently employees who were similarly situated but not members of the protected class. *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 801 (6th Cir.1994). As in a non-reverse discrimination case, the burden of proof always remains with the plaintiff. *Id.* Once the plaintiff establishes

a prima facie case of reverse discrimination, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 803; *Burdine,* 450 U.S. at 254.

In this case, Plaintiff cannot carry his burden of proof for showing race or gender discrimination under *Pierce.* Although it is undisputed that Plaintiff and all other white male applicants were eliminated by Ms. Brooks from consideration during the initial selection process, Defendant, upon finding out about Ms. Brooks' actions, immediately took the affirmative action of invalidating the original selection process and reconstituting the selection panel. Thus, as the district court properly found, Defendant's actions rendered moot Plaintiff's race and gender discrimination claims pertaining to the original selection process.

■ Plaintiff also claims that the Army discriminated against him because of his race and sex when it refused to consider him for the EEO Specialist position in the reconstructed selection process. Specifically, Plaintiff claims that the hiring decision of the reconstructed selection panel was tainted because (1) it allowed some of the original applicants to modify their applications after the closing date; (2) new applicants, who were allowed to apply after the closing date, were considered along with the original applicants; and (3) Plaintiff's KSA (knowledge, skill, abilities) grade was inappropriately determined. As for the first two claims, Plaintiff has failed to adduce any credible evidence that the reconstructed selection panel discriminated against him on the basis of his race or gender. As for the third allegation, Plaintiff claims that he was unfairly eliminated from consideration for the EEO Specialist position because panel members gave him improper KSA scores. According to Plaintiff, the three members of the reconstructed selection panel gave him low

KSA scores because they wrongly determined that his application inappropriately contained the identity and personal information of an individual. However, Plaintiff fails to adduce any evidence showing that the reconstructed panel members discriminated against him on the basis of race or gender when they gave low KSA scores. Because there is nothing in the record suggesting race or gender discrimination by any member of the reconstructed selection panel, Defendant was entitled to a grant of summary judgment as to Plaintiff's claim in this regard as well.

■ The district court also did not err in granting summary judgment to the Secretary on Plaintiff's retaliation claim.

To prove a prima facie case of retaliation under Title VII, a plaintiff must demonstrate "(1) that [he] was engaged in [an] activity protected under Title VII; (2) that [he] was the subject of an adverse employment action, and (3) that there is a causal link between the protected activity and the adverse employment action." *Johnson v. United States Dept. of Health and Human Svcs.*, 30 F.3d 45, 47 (6th Cir.1994).

Plaintiff argues that he was retaliated against in the reconstructed selection process, through disparate treatment by management, and that he was not considered for promotional opportunities thereafter. In this case, Plaintiff was engaged in a protected activity since he engaged in EEO actions on behalf of others and filed his first EEO complaint in this case before the reconstructed selection process. But even though Plaintiff satisfied the first prong of the *Johnson* test, he has failed to show that he was the subject of an adverse employment action. As stated by this Court in *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.1999), adopting the definition set forth by the Seventh Circuit in *Crady v. Liberty Nat'l Bank & Trust Co., of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993):

[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins*, 188 F.3d at 662. Here, Plaintiff cannot show that his failure to be selected as one of the fourteen applicants to be interviewed by the reconstructed selection panel was a "materially adverse change." *Id.*

■ However, even assuming that Plaintiff could show that he suffered an adverse employment action, he has failed to prove a prima facie case of retaliation relating to the actions of the reconstructed selection panel because he cannot show that "there is a causal link between the protected activity and the adverse employment action." *Johnson*, 30 F.3d at 47. Specifically, there is no evidence whatsoever that the low KSA scores given to Plaintiff by the members of the reconstructed selection panel were related to retaliation. The record indicates that none of the members of the reconstructed selection panel knew Plaintiff, or were aware that he had filed an EEO complaint regarding the actions of Ms. Brooks. In any case, even assuming that Plaintiff established a prima facie case of retaliation, Defendant has provided a legitimate, non-discriminatory reason for the low KSA scores.

Nevertheless, Plaintiff alleges that Robert Vail, the civilian personnel officer who advised the reconstructed panel on how to proceed with the selection process, caused the panel to give him low KSA grades. As Plaintiff puts it: "It is no secret that [Mr.

Vail] and Mr. Cook did not have the best of relationships based upon the necessarily adversarial position that they often found themselves in." However, Plaintiff offers no evidence to substantiate this "adversarial" relationship or how it undermined his application in the eyes of the reconstructed selection panel. In any event, Defendant produced affidavits to the effect that Mr. Vail played a very minor role in advising the reconstructed panel. (J.A. at 148–150; 162–65, 402). Moreover, even Plaintiff concedes that "[i]t is unclear what, if anything, Mr. Vail advised the panel." (J.A. at 402). Thus, the district court properly granted summary judgment on Plaintiff's retaliation claim relating to the actions of the reconstructed selection panel.

■ Plaintiff also contends that he was retaliated against by management, alleging that he was subject to disciplinary actions as a result of filing EEO complaints, while female co-workers did not receive disciplinary treatment for similar or more extreme behavior; that a female co-worker received more training than he did; that a female co-worker was allowed to treat him in a discourteous or disrespectful manner without being reprimanded; that his telephone calls and personal visits were monitored and restricted; that he was required to remove personal items from his office when other individuals did not have to do so; that he was reassigned to a different position in a different work area; that he was directed to disclose communication that he had with his attorney or risk being denied leave; and that Defendant improperly detailed Ms. VanBruggen to the position of flight simulation supervisor.

As the district court properly found, Plaintiff failed to prove a prima facie case of retaliation based upon these eight alleged incidents. *Hollins*, 188 F.3d at 662 (quoting *Crady*, 993 F.2d at 136). However, even assuming that these minor incidents add up to a "materially adverse" employment action, Plaintiff cannot show that there was a causal link between the alleged protected activity of filing an EEO complaint and the presumed adverse employment action. Finally, even assuming that Plaintiff established a prima facie case of retaliation on this basis, he cannot show that Defendant's legitimate, nondiscriminatory reasons for the actions were pretextual. *Burdine*, 450 U.S. at 255. Thus, the district court properly granted summary judgment for Defendant with respect to Plaintiff's retaliation claims based on the eight alleged incidents.

## CONCLUSION

The district court did not err in granting summary judgment to the Secretary on Plaintiff's claims of race and gender discrimination and retaliation. Therefore, we **AFFIRM** the district court's judgment.