NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0343n.06

No. 15-2063

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| EDWIN SIEGNER, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jun 22, 2016 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| TOWNSHIP OF SALEM; MARCIA VANFOSSEN; | ) | UNITED STATES DISTRICT |
| DAVID TRENT; ROBERT HEYL; PAUL | ) | COURT FOR THE EASTERN |
| UHEREK; SUSAN BEJIN; JIM RACHWAL, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: SUTTON and GRIFFIN, Circuit Judges; OLIVER, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff Edwin Siegner is a part-time Salem Township firefighter. In September 2012, defendants Marcia VanFossen, David Trent, Robert Heyl, Susan Bejin, and Paul Uherek denied Siegner an interview for the position of Township Fire Chief. Siegner alleges this was retaliation for a charge of discrimination he filed with the Equal Employment Opportunity Commission (EEOC) in March 2010. He further contends that defendant Jim Rachwal, whom defendants selected as Fire Chief, retaliated against him after being hired. Once discovery closed and defendants sought summary judgment, Siegner moved to amend his complaint to add claims of race discrimination and name current Township Supervisor Gary Whittaker as a defendant. The

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

district court denied plaintiff's motion as untimely and futile, and granted defendants' motion for summary judgment. Finding no error requiring reversal, we affirm.

I.

Siegner began working for Salem Township as a part-time firefighter in 2000. In 2007, the Township Supervisor and Treasurer learned of Siegner's background in computer programming and assigned him additional duties as an IT Administrator. Plaintiff continued in his dual role until December 2009, when the Township Board of Trustees hired an outside firm for IT services upon recommendation of legal counsel.

On March 11, 2010, Siegner filed a charge with the EEOC alleging the Township discriminated against him by removing his IT duties "because of [his] race, Asian," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. Siegner believed that the Board's decision was racially motivated because it "replaced [him] with a firm that was composed of all white people," and maintained a "past practice" of discriminating against "anybody that is not white," including African Americans. Still, he decided not to pursue a lawsuit and continued working as a part-time firefighter.

In 2012, Heyl served as Township Supervisor and Uherek as Treasurer. They sat on the Board of Trustees, along with VanFossen, Bejin, and Trent, as well as non-party Brien Witkowski. That February, the Board terminated the Township Fire Chief and appointed firefighter Ferman "Ed" Rohraff interim Chief. Sometime thereafter, the Board began accepting applications for a permanent replacement, setting May 31, 2012, as the application deadline. Assuming Rohraff was a "shoe-in" for the position, plaintiff did not submit an application. Fellow firefighter Rachwal also did not apply during this period.

In August, the Township elected Whittaker to replace Heyl as Township Supervisor. Although Whittaker was not slated to take office until November, he approached Heyl shortly after the election to recommend Rachwal as a "good candidate" for Fire Chief. Despite some initial hesitation, Heyl conceded that Rachwal "might be a good candidate." Ultimately, Heyl and Whittaker asked Rachwal to consider applying, and Rachwal agreed.

At its September 11 meeting, the Board voted to reopen the application process for current Township firefighters only, with September 21, 2012, as the new deadline. Uherek and Heyl acknowledge the Board made the decision in order to accept Rachwal's late-filed application. The Board gave others a chance to reapply partly out of concern that considering only Rachwal's application "could be construed as favoritism." Plaintiff alleges defendants further favored Rachwal by accepting his application even before reopening the application process. Rachwal, on the other hand, claims he applied only after the September 11 vote. Following the meeting, the Trustees interviewed several candidates who applied during the first application window, including interim Chief Rohraff.

Plaintiff submitted his application on September 20, 2012. That same day, he sent the Board a letter complaining that the hiring process "has been full of confusion and at the very least, is suspect on its face." Siegner accused the Board of colluding with and favoring an unnamed firefighter (presumably Rachwal), while denying him "a fair and equitable chance at applying for this job." Others who applied during the first round "were given weeks if not months to answer the [application] questionnaire," whereas plaintiff had only days to finish his. Siegner "believe[d] that this behavior . . . border[ed] [on] discrimination and [wa]s indicative o[f] how this board has treated minorities throughout its term of office." He recommended the

Board "restart the entire hiring process with a promise to maintain a reasonable standard of conduct."

The Board reconvened on September 25, 2012, to continue evaluating prospective candidates. By that point, the Trustees interviewed all applicants except Siegner and Rachwal. They interviewed Rachwal that evening, then turned to plaintiff's application. Heyl noticed plaintiff submitted only two pages of the three-page form. "It's been . . . the policy of the Salem Township that in the past any applications that came in incomplete were basically not used." "So," Heyl suggested the Board "not include" plaintiff's application "in[] our process tonight." In addition to missing a page, VanFossen remarked that the application pages Siegner did submit were incomplete. Under "[e]ducation," areas such as "course of study, years completed, diploma, something that should be well known, [were] blank." Regarding the work experience portion, VanFossen "personally kn[e]w . . . [Siegner] had other employers" which he omitted from the application. Plaintiff also provided an incorrect phone number for one of his references, along with a signature VanFossen considered illegible. Importantly, the page plaintiff failed to submit requested the applicant's driver's license information, which the Township needed in order to perform a required driver's license test.

Witkowski asked whether VanFossen "went through all the other applications exactly the same way" and found the remaining submissions complete. VanFossen noted Rohraff also failed to list any references on his application. But since the Board had been working with Rohraff for several months, VanFossen believed it was not "necessary [for him] to put those references down."

Heyl moved to exclude Siegner's application as insufficient and Uherek seconded the motion. Five of the six Trustees present voted in favor of exclusion, with Witkowski as the only

holdout. With plaintiff's application removed, the Board unanimously agreed to hire Rachwal as Fire Chief.

Plaintiff filed a second charge with the EEOC on April 9, 2013, this time alleging the Board excluded his application in retaliation for his March 2010 EEOC complaint. He claimed the Board also recruited Rachwal in its efforts against him. "Since the appointment of the current Fire Chief, he has continually told . . . me that 'I should just quit' or words to that effect." Plaintiff checked boxes for retaliation and race discrimination on the charge form, though without identifying any conduct he felt was racially motivated.

Siegner alleges Rachwal continued to harass him over the next year. In particular, on two occasions in 2013, Rachwal "pulled [plaintiff] into a private meeting" to discuss plaintiff's failure to meet the Fire Department's twenty-percent participation goal, which mandates that firefighters respond to at least twenty percent of calls for assistance. Rachwal also asked Siegner to notify him when plaintiff was in town and available to respond to runs—a requirement that applied only to plaintiff. On February 2, 2014, Rachwal issued plaintiff a memorandum stating that he may be terminated on June 30, 2014, if his participation remained below twenty percent.

Plaintiff's living situation makes the participation requirement difficult to meet. Siegner is a full-time employee of the Bureau of Customs and Border Protection, a division of the United States Department of Homeland Security. He works out of both the Detroit field office, and the Bureau's Sault Ste. Marie location, requiring him to split his time between southeastern Michigan and the Upper Peninsula.

In response to the February 2014 memorandum, plaintiff asserted his rights under the firefighters' collective bargaining agreement. He and Rachwal "engaged the union to come to a

more equitable understanding," resulting in no discipline for plaintiff. To date, Siegner remains a part-time Salem Township firefighter.

On April 21, 2014, plaintiff filed a two-count complaint against defendants alleging: (1) "Retaliation in Violation of [the] 1st Amendment of the Constitution of the United States of America Under Title VII"; and (2) retaliation in violation of the Michigan Elliott-Larsen Civil Rights Act (ELCRA). More than a year of discovery followed, and defendants moved for summary judgment. On the same day he responded to defendants' motion, plaintiff moved to amend his complaint, seeking to add claims of race discrimination and name Whittaker as a defendant. The district court granted defendants summary judgment and denied plaintiff's motion to amend in a single order. Plaintiff appealed.

## II.

## A.

We first address Siegner's motion to amend the complaint to add state and federal race discrimination claims and name Whittaker as a defendant.[1] The district court rejected the motion as untimely and futile.

Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend the pleadings should be "freely give[n]," "when justice so requires." Justice may not require leave to amend, however, in cases of undue delay, prejudice to the nonmovant, bad faith, dilatory motive, or where the proposed amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). We review a district court's decision to deny a motion to amend for abuse of discretion. *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 666 (6th Cir. 2005).

---

[1]Plaintiff's amended complaint identifies Whittaker as the primary source of racial animus, while also alleging Whittaker influenced the Board to hire Rachwal, and noting the Township "may be held vicariously liable." We therefore assume his proposed discrimination claims are asserted against Whittaker, as well as the other defendants.

Plaintiff moved to amend the complaint on the same day he responded to defendants' motion for summary judgment—nearly a month after the dispositive motion cut-off date, and two months after the close of discovery. Our court requires "at least some significant showing of prejudice to deny a motion to amend based solely upon delay." *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007) (internal quotation marks omitted). Allowing an amendment after discovery is closed and summary judgment motions are "fully briefed" imposes significant prejudice on defendants. *Id.*; *see also Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

Further, "[w]hen amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). Siegner justifies his delay by claiming he was unaware of a potential discrimination claim prior to deposing Whittaker and firefighter Patrick Belanger in May 2015. Whittaker acknowledged in his deposition that he formerly flew a Confederate flag on his property and keeps a "black boy hitching post" in his barn—an item Whittaker described as an "antique[]." Belanger described Whittaker as a racist, and stated that use of the "'N' word," as well as slurs against gays and lesbians are common at the fire hall. Additionally, he claimed the Board "would never have hired Ed Siegner as chief no matter what he wrote down [on his application]. It's a fact."

Plaintiff secondly argues defendants are not prejudiced by the late motion because they had notice of a possible race discrimination claim, as evidenced by defense counsel's questions on the subject at plaintiff's April 2015 deposition.

Ironically, plaintiff's second point disproves the first. Siegner's responses to defense counsel's inquiries demonstrate that he believed—a full month before plaintiff's counsel deposed

Belanger and Whittaker—that defendants subjected him to racial discrimination. When asked if the Board's vote to disqualify his application was the "only reason" he was suing defendants, Siegner replied that defendants had both "retaliat[ed] because I filed the EEOC complaint in 2010," and "discriminat[ed] against me because I was a minority." Other evidence reveals plaintiff harbored these suspicions well before filing his April 2014 complaint. Siegner checked the box for race discrimination in his April 2013 EEOC charge, and alleged the Township discriminated against him on the basis of race in his March 2010 EEOC charge. Most tellingly, plaintiff also explicitly accused the Board of discriminating against minorities in his September 20, 2012, letter—demonstrating that he suspected racial bias even prior to the Board's decision denying him an interview. In short, Siegner was "obviously aware of the basis of the claim for many months," but waited until summary judgment to pursue it. *Leary v. Daeschner*, 349 F.3d 888, 908 (6th Cir. 2003) (quoting *Duggins*, 195 F.3d at 834).

Plaintiff's counsel explained at oral argument that he was reluctant to rely solely on Siegner's perceptions to allege race discrimination; he believed he did not "have enough" to go forward until he read Whittaker's and Belanger's deposition transcripts. Counsel miscalculated. At the time he filed the initial complaint, plaintiff knew the Board had denied him an interview based on an incomplete application, while simultaneously granting an interview to a Caucasian applicant (Rohraff), who also submitted an incomplete application. Questions of futility and success on the merits aside, this is enough "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Evidence that Whittaker (who was not then a Board member) may hold prejudicial animus against African Americans (a protected class to which plaintiff does not belong), was not necessary to assert plaintiff's rights.

The district court did not abuse its discretion in denying plaintiff's motion to amend as untimely. Accordingly, we need not consider whether it was also futile.

B.

We review the district court's grant of summary judgment de novo. *Brainard*, 432 F.3d at 660. Summary judgment is proper when, viewing all the evidence and inferences in a light most favorable to the nonmovant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the movants, defendants must initially demonstrate there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If they carry their burden, plaintiff "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted). Plaintiff's evidence must be sufficient for the jury to return a verdict in his favor; evidence that is "merely colorable" or "not significantly probative" will not suffice. *Id.* at 249–50. We will affirm summary judgment against a party who fails to establish an essential element of his case which he bears the burden of proving at trial. *Celotex*, 477 U.S. at 323.

Plaintiff alleges retaliation in three respects. First, Siegner contends the Board retaliated against him in response to his March 2010 EEOC charge by failing to interview him for Fire Chief. Second, he accuses Rachwal of retaliating against him by counseling him for his low participation rate. Third, Siegner claims the Board "retaliated against [him] for exercising his First Amendment Rights."

1.

Title VII prohibits an employer from retaliating against an employee "because he has made a charge" of discrimination. 42 U.S.C. § 2000e-3(a). Michigan's ELCRA includes a similar provision, *see* Mich. Comp. Laws § 37.2701(a), and "[t]he analysis is the same under either act," *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 627 (6th Cir. 2013); *see also Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 653 (Mich. 2005). Thus, for our purposes, "it suffices to state [and apply] the standards articulated in Title VII cases." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 n.2 (6th Cir. 2013).

A plaintiff can establish retaliation through direct or circumstantial evidence. *Id.* at 673. Plaintiff sees this as a direct-evidence case. He believes Witkowski's testimony "compels the conclusion" that the Board acted with a retaliatory motive. *Kuhn*, 709 F.3d at 624 (internal quotation marks omitted). We disagree.

At his deposition, Witkowski stated it was his "opinion" that the Board refused to consider Siegner's application because of Siegner's March 2010 EEOC charge. Witkowski claimed to base this opinion on "what [he] heard and saw" from other Trustees—specifically, Heyl and Uherek. Once pressed for examples, however, Witkowski had little to offer: "I do not have specific recollections of statements, either dates or times. . . . [J]ust an overall animosity towards Mr. Siegner," "again, can I remember specifics? No." Witkowski could not state when exactly Heyl or Uherek made these statements, or whether their unlawful motives extended to other Board members.

This is not direct evidence of retaliation. Witkowski explicitly denied that any Board member expressed an intent to exclude plaintiff's application in response to his March 2010 EEOC charge. He acknowledged that none of the Trustees even mentioned the two-year-old

charge during the September 25, 2012, meeting. Defendants' statements on the meeting transcript record confirm they rejected plaintiff's application because it was incomplete. Witkowski's "[m]ere personal beliefs, conjecture, and speculation" that these statements are untrue, and that the Board instead acted upon some unspoken animus, are insufficient to support an inference of retaliation, *see Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006), much less "compel the conclusion" of such a motive. Siegner is therefore left to make his case against defendants with circumstantial evidence.

To establish a prima facie claim of retaliation using circumstantial evidence, Siegner must show that: (1) he engaged in protected activity; (2) defendants knew of his protected activity; (3) defendants subjected him to an adverse employment action; and (4) the adverse employment action was causally connected to the protected activity. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468–69 (6th Cir. 2012). Demonstrating the last element requires proof "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"—meaning defendants would not have denied plaintiff an interview, or counseled him for low participation, "but-for" their retaliatory intent. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

If plaintiff offers a prima facie case, the burden of production shifts to defendants to articulate a legitimate, nondiscriminatory reason for their actions. *Fuhr*, 710 F.3d at 674. Once the employer presents such a reason, the burden returns to plaintiff to demonstrate that defendants' proffered reason is pretext for retaliation. *Id.* at 675.

Defendants disputed the third and fourth elements of plaintiff's prima facie case before the district court, and the court sided with defendants. It determined plaintiff failed to establish

an adverse action as against Rachwal, and it found that he failed to establish causation as against the Board.

Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Consequently, an employer's adverse action against a plaintiff must be "materially adverse," meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted). This is an objective test, intended "to separate significant from trivial harms." *Id.* Materially adverse actions are not, however, "limited to [the] narrow definition of an 'adverse employment action' that includes only actions affecting the terms, conditions or status of employment." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 346 (6th Cir. 2008). "A supervisor's refusal to invite an employee to lunch is normally trivial," "[b]ut to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014) (citation omitted).

2.

We agree with the district court that Rachwal's conduct in warning plaintiff about his below-twenty-percent participation rate does not rise to the level of a materially adverse action. Consultation between a supervisor and an employee, even when it involves a "confrontation . . . in which harsh words were exchanged," is not a materially adverse action. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007). The same goes for Rachwal's suggestion that the Township might be better served by a more responsive firefighter. "Title VII," after all, "does not set forth 'a general civility code for the American workplace.'"

*Burlington*, 548 U.S. at 68 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Nor does it exempt plaintiff from employment standards enforced in an even-handed fashion. The evidence here shows Rachwal issued the same termination warning memorandum to, and held similar private conversations with, "around four or five" other firefighters whose participation rates also fell below the twenty-percent threshold. Filing an EEOC charge does not immunize plaintiff from receiving the same treatment as his coworkers for violating the same rules. *Cf. Laster*, 746 F.3d at 732 (finding a question of fact where the plaintiff "was denied training opportunities," "singled out for violating at least two department policies that were selectively enforced against him, and disciplined more harshly than his peers for identical violations"). And while Rachwal required only Siegner to notify him regarding his availability, this requirement was not unreasonable given that Siegner is the only firefighter who spends half the year residing in Michigan's Upper Peninsula, five hours away from Salem Township.

Moreover, Rachwal did not actually dissuade Siegner from reporting what he perceived as unfair treatment. Plaintiff filed a grievance with the union over the twenty-percent requirement, resulting in a mutually agreeable outcome that included no discipline against him. *See Goodsite v. Norfolk Southern Ry. Co.*, 573 F. App'x 572, 582 (6th Cir. 2014) (evidence that "an employee continues to be undeterred in his or her pursuit of a remedy," although not dispositive, "may shed light as to whether the actions are sufficiently material and adverse to be actionable") (citation omitted). Siegner has not demonstrated that Rachwal subjected him to a materially adverse action, and the district court properly granted Rachwal summary judgment on this basis. Thus, we do not consider whether Rachwal's conduct was causally connected to Siegner's protected activity.

3.

The district court likewise found that the Board's decision to deny plaintiff an interview was not a materially adverse action. Our court reached a similar conclusion on at least one prior occasion. *See Cook v. Caldera*, 45 F. App'x 371, 377 (6th Cir. 2002) ("Plaintiff cannot show that his failure to be selected as one of the . . . applicants to be interviewed . . . was a materially adverse change.") (internal quotation marks omitted). *Cook*, however, predates the Supreme Court's clarification that retaliation is "not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington*, 548 U.S. at 64. In view of *Burlington*, we are not inclined to hold that denying an interview can *never* constitute a materially adverse employment action. As always, "[c]ontext matters." *Id.* at 69. "Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an act that would be immaterial in some situations is material in others." *Id.* (internal quotation marks omitted).

We need not make that materiality finding here, because assuming plaintiff proved a materially adverse action, his claim against the Board fails on causation grounds.

To begin, timing is not on plaintiff's side. The Board declined to interview plaintiff on September 25, 2012—more than two years after Siegner filed his March 2010 EEOC charge. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation marks omitted); *see also Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) (temporal proximity alone is sufficient when the adverse action "occurs very close in time after an employer learns of a

protected activity"). Two years is not "very close." *See Clark Cty.*, 532 U.S. at 273–74 ("Action taken . . . 20 months later suggests, by itself, no causality at all.").[2]

As further evidence of causation, plaintiff points to Whittaker's testimony that, under his tenure as Township Supervisor, all job applicants are afforded interviews. This testimony is irrelevant. Whittaker was not Township Supervisor at the time of the adverse action, and his practices were not in place at the time the Board excluded plaintiff's application.

Siegner also invokes Witkowski's testimony regarding Heyl and Uherek's anger over his March 2010 EEOC charge. But as we said before: Witkowski's unfounded belief that Heyl and Uherek bore retaliatory animus is insufficient for a jury to find that the Board would have accepted plaintiff's application but for his protected conduct two years earlier. *Grizzell*, 461 F.3d at 724.

Finally, Siegner suggests that one can infer retaliatory motive from the Board's decision to interview Rohraff, despite the fact that he also submitted an incomplete application. We disagree. Plaintiff ignores the fact that his application was not just incomplete; it was also insulting. For instance, plaintiff said he wanted to be Fire Chief to "put an end to the corrupt practices brought on by the Board." He listed "witness[ing] justice prevail" as one of his future goals. These sanctimonious responses set plaintiff apart from Rohraff and gave defendants the impression that he was less than serious about the position, as Bejin stated: "Basically, Mr. Siegner called the Salem Township Board of Trustees 'unjust' in his application. . . . I just do

---

[2]Plaintiff faults the district court for failing to consider his September 20, 2012, complaint letter as protected activity, noting he sent it to the Board only five days before the Board excluded his application. This failing is Siegner's alone. He never argued that the Board excluded his application in retaliation for the letter. "Ordinarily, we will not address issues raised for the first time on appeal." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013). This case is no exception.

not see how Mr. Siegner believes that he can insult a prospective employer, and then expect to be interviewed by the same employer he just insulted."

Plaintiff has not shown that unlawful motive was the but-for cause of the Board's decision. The district court properly granted summary judgment for defendants.

## C.

Plaintiff last contends the district court erred in granting summary judgment on his First Amendment retaliation claim. "Under 42 U.S.C. § 1983, an individual may bring a private cause of action against anyone who, under color of state law, deprives [the individual] of rights, privileges, or immunities secured by the Constitution or conferred by federal statute," including his First Amendment right to free expression. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citing *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).

The district court granted summary judgment in favor of defendants on plaintiff's § 1983 claim because it paralleled his Title VII claim, without alleging a separate constitutional violation. "Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII." *Day v. Wayne Cty. Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984). But Siegner's complaint makes only oblique references to the First Amendment, and he never alleges a constitutional violation independent of his Title VII claims. *See Toth v. City of Toledo*, 480 F. App'x 827, 831 (6th Cir. 2012) (*Day* forecloses a Title VII claim where "the plaintiff sued under Title VII and § 1983 for conduct that only violated Title VII"). There is no error in the district court's judgment.

## III.

The record implies that the Board may well have favored Rachwal in the hiring process. But the district court correctly observed that "[p]laintiff does not allege a violation of his due

process rights"; he alleges only retaliation, which he failed to prove. The district court's judgment denying plaintiff's motion to amend and granting defendants' motion for summary judgment is affirmed.