RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0070p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
———————————

GERALDINE A. FUHR,

    *Plaintiff-Appellant*,

  *v.*

HAZEL PARK SCHOOL DISTRICT,

     *Defendant-Appellee.*

No. 11-2288

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:08-cv-11652—Bernard A. Friedman, District Judge.

Decided and Filed: March 19, 2013

Before: KEITH, MARTIN, and ROGERS, Circuit Judges.

———————————

## COUNSEL

———————————

**ON BRIEF:** Mark Granzotto, MARK GRANZOTTO, P.C., Royal Oak, Michigan, for Appellant. Timothy J. Mullins, John L. Miller, GIARMARCO, MULLINS & HORTON, P.C., Troy, Michigan, for Appellee. Lawrence J. Joseph, Washington, D.C., for Amicus Curiae.

———————————

## OPINION

———————————

  DAMON J. KEITH, Circuit Judge. In 1999, Plaintiff-Appellant Geraldine Fuhr filed a successful lawsuit to be instated as varsity boys basketball coach at Hazel Park High School, where she had been employed as varsity girls basketball coach. For five years she coached both the girls and boys varsity basketball teams. In 2006, she was removed from her position coaching varsity girls basketball. In this action, she claims that her dismissal as the varsity girls basketball coach and other acts of harassment are a result of her 1999 suit. The district court granted Defendant-Appellee Hazel Park

1

School District's motion for summary judgment, finding that Fuhr had failed to state a *prima facie* case for her claims. In this appeal, Fuhr is only pursuing her retaliation claim and has abandoned her claims for gender discrimination and hostile work environment. For the following reasons, we **AFFIRM** the judgment of the district court.

## FACTUAL BACKGROUND

Multiple cases are involved in the background of this case. Although the parties dispute some of the facts, they are presented as characterized by Plaintiff Geraldine Fuhr because at the summary judgment phase the court views all of the facts and draws all reasonable inferences in favor of the non-moving party. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006).

### *Fuhr I*

Since 1989 Fuhr has been employed as a teacher and athletic coach by Defendant Hazel Park School District ("Hazel Park") at Hazel Park High. In October 1999, Plaintiff, then varsity girls basketball coach, sued Defendant in federal court. *See Fuhr v. Sch. Dist. of the City of Hazel Park*, 131 F.Supp.2d 947 (E.D. Mich. 2001) ("*Fuhr I*"). In that case, Fuhr alleged that Defendant had discriminated against her because of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), and Michigan's Title VII parallel, the Elliott-Larsen Civil Rights Act, Michigan Compiled Laws § 37.2101 ("ELCRA"), by failing to hire her as the head coach of the high school boys varsity basketball team. In August 2001, a jury found in favor of Plaintiff. In October 2001, in response to Fuhr's post-trial motion for equitable relief, the court ordered that she be instated as the varsity boys basketball coach.

Per the district court's order, Hazel Park installed Fuhr as head coach for the boys varsity basketball team. Hazel Park also allowed her to remain coach for the girls varsity basketball team. However, Hazel Park appealed the district court's judgment, and it was not made final until it was affirmed by this Court in 2004. *See Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753 (6th Cir. 2004). Fuhr served in both positions from 2001 to 2006.

### MHSAA Case

As *Fuhr I* continued through the courts, an unrelated case was filed in 2001 by Michigan parents against the Michigan High School Athletic Association ("MHSAA") alleging in part that it violated Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, because the girls basketball season was not held at the same time as the boys season. A federal district court ordered that the girls and boys seasons be realigned so that the boys and girls played at the same time. *See Cmtys. for Equity v. Michigan High Sch. Athletic Ass'n*, 178 F.Supp.2d 805 (W.D. Mich. 2001), *vacated in part*, 544 U.S. 1012 (2005). This order was affirmed, vacated, reheard, and affirmed again up and down the federal courts; in April 2007 the order to realign the girls and boys seasons was made final. *See Cmtys. for Equity v. Michigan High Sch. Athletic Ass'n*, 459 F.3d 676 (6th Cir. 2006), *cert. denied*, 549 U.S. 1322 (2007).

### Retaliatory Acts

As both *Fuhr I* and the *MHSAA* case made their way through the courts, the atmosphere at Fuhr's workplace, Hazel Park High, was quite contentious. Fuhr had a rocky relationship with a number of her colleagues, superiors, and the parents of team members. The following acts occurred:

- Defendant disciplined some of Plaintiff's best players, suspending them from team participation. Defendant submitted evidence justifying the disciplinary action.

- The school's booster club bought an ice machine and decided to place the machine in the football coach's office, an area only accessible by males. Hazel Park High's athletic director and Plaintiff's supervisor, Tom Pratt, did not tell Plaintiff of the existence of the booster club's ice machine when the school's main ice machine malfunctioned.

- Defendant denied the varsity boys basketball team permission to use the football locker room, which is the locker room closest to the main gym.

- Hazel Park High's athletic director and Plaintiff's supervisor, Tom Pratt, ordered the varsity boys basketball team's custom uniforms late, causing the uniforms to arrive after the basketball season began. Pratt has been late ordering uniforms for other school teams as well.

- One of Plaintiff's teams was denied the use of the school gym because the City Recreation Center had already reserved the gym for the time Plaintiff wanted.

- Defendant denied Plaintiff's request for funds to pay an athletic trainer to do injury evaluation of the varsity basketball players during basketball practice. Due to the denial, Plaintiff had to secure a trainer through funds from a basketball account. For budgeting reasons, this policy applies to all sports.

- Pratt did not comply with his responsibility as athletic director to evaluate all of Hazel Park High's coaches on an annual basis. Pratt evaluated Plaintiff only once in the five years she was coach for both varsity basketball teams.

- Clint Adkins, the school board president, set up a room for community members to complain about Fuhr at the city's community center. Additionally, Tom Pratt did not inform Fuhr about a petition circulated by parents which called for her removal as varsity boys basketball coach, even though he was aware of the petition.

In one November 2005 conversation Don Vogt, the principal of Hazel Park High, spoke with Fuhr, saying "this is a good old boys network. They are doing this to you to get even, you know. . . They are doing this to you to get even because you stood up for your rights. They are doing this to you to get back at you for winning the lawsuit." R. 96-4 at 417.

After *Fuhr I* became final in 2004, but before the *MHSAA* case became final in 2007, Defendant removed Plaintiff as the coach of the girls varsity basketball team on June 1, 2006. Plaintiff remained varsity boys basketball coach. Given the ongoing litigation in the *MHSAA* case at the time, Hazel Park defended Plaintiff's removal as an effort to be proactive should the boys and girls seasons need to be realigned pursuant to a court order. Hazel Park reasoned that one coach would have difficulty overseeing two teams that played simultaneously.

In February 2007 Fuhr filed a charge of discrimination with the Michigan Department of Civil Rights ("MDCR"), alleging "[s]ince I won a gender-based lawsuit against the employer, I have been harassed, a varsity girls' basketball job has been taken away from me, my authority has been undermined, and I have not been supported."

R. 96-8. Plaintiff indicated she was alleging discrimination based on sex and in retaliation for *Fuhr I.* She reported that the earliest instance of retaliation occurred on April 27, 2006. Plaintiff went on to file two more charges with the MDCR for sex discrimination and retaliation in December 2008 and July 2009. The Equal Employment Opportunity Commission ("EEOC") attempted to mediate the lawsuit. After mediation between the parties failed, the EEOC issued Fuhr a right to sue letter.

**PROCEDURAL BACKGROUND**

On April 18, 2008, Fuhr filed the present action in district court. In her amended complaint, filed in August 2009, Plaintiff alleged that ever since she prevailed at the first trial, Defendant has discriminated and retaliated against her in various ways. Specifically, she argued that Defendant dismissed her as the girls varsity coach in retaliation for winning the first trial. She also alleged that "because of her sex," or "because of her complaints" regarding her unfair treatment, Defendant conducted a biased internal investigation, has treated her differently than male coaches, and has demeaned and belittled her by, among other things, unfairly disciplining her team members, failing to provide her with "all resources she needs and accusing her of failing to comply with departmental regulations." R. 41 ¶ 11 (A)–(H).

Based on these allegations, Plaintiff asserted discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and ELCRA. On October 15, 2010, Hazel Park filed a motion for summary judgment. The essence of Plaintiff's retaliation claims was that Defendant's mistreatment of her is in retaliation for her current and prior lawsuits, her complaints with the EEOC and MDCR, and her "internal complaint against discrimination."[1] Plaintiff filed a response to which Defendant replied. The district court issued an

---

[1]The protected activity alleged under the Title VII retaliation claim is Plaintiff's "prior lawsuit and her internal complaint against discrimination" and her "current lawsuit and EEOC complaints." R. 41 ¶¶ 27–28. The protected activity alleged under the ELCRA retaliation claim is Plaintiff's "prior lawsuit and her internal complaint against discrimination." R. 41 ¶ 42. No protected activity is alleged under Plaintiff's Title IX retaliation claim; rather, she alleges that "Defendant's actions, as described more specifically in the Common Allegations, constituted retaliation because plaintiff complained of sex discrimination . . . ." R. 41 ¶ 56.

Opinion and Order granting Hazel Park's motion for summary judgment on all claims on September 19, 2011. Fuhr filed a Notice of Appeal on October 17, 2011. Plaintiff limits her appeal to the grant of summary judgment on her retaliation claims. Appellant Br. at 2.

## STANDARD OF REVIEW

We review an order granting summary judgment *de novo*. *Tysinger*, 463 F.3d at 572. Under Federal Rule of Civil Procedure 56(a), summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This requires us to view the evidence and draw all reasonable inferences in favor of the non-moving party. *Tysinger*, 463 F.3d at 572. A genuine dispute concerns evidence "upon which a reasonable jury could return a verdict in favor of the non-moving party." *Id*. A factual dispute is material only if it could affect the outcome of the suit under the governing law. *Id*.

## ANALYSIS

Fuhr argues that Hazel Park removed her as the girls varsity basketball coach and subjected her to various forms of harassment in retaliation for prevailing in *Fuhr I*. A *de novo* review shows that the district court properly granted summary judgment in favor of Hazel Park because Fuhr has not established a *prima facie* case under Title VII.

### Anti-Retaliation Provisions

Plaintiff brings anti-retaliation claims under Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and ELCRA. The same legal framework applies to all three claims. Thus, the standards articulated by Title VII cases are sufficient to establish the applicable legal framework here.[2]

---

[2]ELCRA and Title IX retaliation claims are analyzed using the same standards as Title VII. *See Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) ("Cases brought pursuant to ELCRA are analyzed under the same evidentiary framework used in Title VII cases."); *Nelson v. Christian Bros. Univ.*, 226 F. App'x 448, 454 (6th Cir. 2007) ("Generally, courts have looked to Title VII, 42 U.S.C. §§ 2000e, as an analog for the legal standards in both Title IX discrimination and retaliation claims."). Therefore, it suffices to state the standards articulated in Title VII cases.

Title VII of the Civil Rights Act of 1964 contains a potent anti-retaliation provision. The statute provides in relevant part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim can be established either through direct evidence of retaliation or circumstantial evidence that would support an inference of retaliation. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010).

**I.      Direct Evidence**

Direct evidence "requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). It also "*requires* the conclusion that unlawful retaliation was a motivating factor in the employer's action." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (emphasis in original).

Fuhr submits the following statement by the principal of Hazel Park High, Don Vogt, from a November 2005 conversation in which she recalls him telling her: "this is a good old boys network. They are doing this to you to get even, you know. . . They are doing this to you to get even because you stood up for your rights. They are doing this to you to get back at you for winning the lawsuit."

Fuhr argues that this statement unambiguously reveals that the school district took specific actions against her with retaliatory intent because:

> Mr. Vogt referred to the "good old boys network" that existed in Hazel Park. Moreover, the statement made by Mr. Vogt specifically referred to what these "good old boys" were *doing* to Ms. Fuhr. No inference of any kind is needed to conclude that the "they" that Mr. Vogt was referring to were the "*good old boys*" within the district who were *doing*

to Ms. Fuhr the various adverse acts that she has challenged in this case
. . . .

Appellant Br. at 47 (emphasis in original).

Contrary to Fuhr's argument, inferences are needed to conclude that she has been unlawfully retaliated against. Though the statement clearly refers to a good old boys network, it is unclear who is a part of that network. Nor is it clear what acts Vogt refers to as retaliatory. He could be referring to all of the collective acts that occurred prior to her removal as the varsity girls coach or only some of those acts or only her removal as varsity girls coach or her removal and some combination of the other acts. These ambiguities do not require a conclusion that these unspecified acts by unspecified people were based on unlawfully retaliatory motives. *See Minadeo v. ICI Paints*, 398 F.3d 751, 764 (6th Cir. 2005) (holding that plaintiff failed to offer direct evidence where "[w]e could not possibly conclude that the comments and circumstances pointed to by [plaintiff] show a discriminatory motive on the part of [defendant] without drawing undue inferences").

Accordingly, Fuhr cannot prevail unless she presents circumstantial evidence of unlawful retaliation.

**II.     Circumstantial Evidence**

Retaliation claims supported by circumstantial evidence are examined using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Spengler*, 615 F.3d at 491.

**A.     *McDonnell Douglas/Burdine* Framework**

Under the *McDonnell Douglas/Burdine* framework, a plaintiff has the initial burden to establish a *prima facie* case of retaliation. The *prima facie* case consists of four elements: (1) the plaintiff engaged in activity protected under Title VII; (2) plaintiff's exercise of her protected rights was known to defendant; (3) an adverse employment action was subsequently taken against the employee or the employee was

subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009).

Should the plaintiff establish a *prima facie* case, a presumption of unlawful retaliation arises and the burden of production shifts to the defendant to rebut the presumption by "articulat[ing] some legitimate, nondiscriminatory reason for its action." *Spengler*, 615 F.3d at 492 (quoting *McDonnell Douglas*, 411 U.S. at 802).

If a defendant successfully produces such a legitimate reason, then the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination. *Abbott*, 348 F.3d at 542. While the burden of production shifts throughout the *McDonnell Douglas/Burdine* framework, the burden of persuasion always remains with the plaintiff. *Id*.

The parties do not dispute that the first two prongs of Fuhr's *prima facie* case have been met: Fuhr's 1999 discrimination suit was protected activity under Title VII and Defendant knew that Fuhr engaged in this protected activity. Therefore, the crux of this case rests on whether Fuhr can establish: (1) that a causal connection exists between her suit and the retaliatory acts and (2) that the retaliatory acts constitute an adverse employment action.

### B.    Causal Connection Between the Protected Activity and Retaliatory Acts

Fuhr argues that the district court erred in its analysis of whether there was a causal connection between the district court's judgment in 2001 and her removal as girls varsity coach in 2006. She claims that the relevant timeline is between her installation as boys varsity coach and various retaliatory actions taken against her prior to her 2006 removal as the varsity girls coach. Yet even with this shortened timeline, Fuhr is unable to establish that there was a causal connection between her instatement as varsity boys coach and the actions taken prior to her removal as varsity girls coach.

A causal connection is established when a plaintiff proffers "evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009) (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). Temporal proximity alone cannot establish a causal connection. *Spengler*, 615 F.3d at 494. However, temporal proximity always plays a role in establishing a causal connection; its significance depends on the context.

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (citation omitted).

Fuhr brought her discrimination case in 1999. It was not until 2001, however, that the district court ordered Defendant to make Plaintiff the varsity boys coach; and it was March 2004 by the time the district court's 2001 judgment was affirmed on appeal. *See Fuhr I*, 364 F.3d 753 (6th Cir. 2004). The earliest date on which Fuhr asserts a retaliatory act took place is April 27, 2006. Even when taking March 2004 as the date in which Fuhr engaged in protected activity [i.e. fully litigating the discriminatory denial of the boys varsity coach position] and April 2006 as the date of the earliest act of retaliation, this leaves a gap of two years between her protected activity and the first reported retaliatory act.

This multi-year gap proves fatal to Fuhr's assertion that there is a causal connection. Our review of the law shows that multiyear gaps between the protected conduct and the first retaliatory act have been insufficient to establish the requisite causal connection. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (holding that an adverse "[a]ction taken (as here) 20 months later suggests, by itself, no causality at all"); *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007) (noting that the

plaintiff was unable to "point to any authority holding that a causal connection exists where there has been a gap of multiple years . . . between the protected activity and the adverse employment action"). Therefore, while temporal proximity alone cannot establish a causal connection, a lack of temporal proximity alone can be fatal to an attempt to establish a causal connection under circumstances such as these.

Because the *prima facie* case for retaliation requires that all four elements be satisfied, the failure to find one element all but resolves this case. Nevertheless, even if Fuhr could establish a causal connection, she would be unable to establish that Defendant took an adverse employment action against her.

### C.     Adverse Employment Action

Fuhr argues that the district court was incomplete in its analysis of her *prima facie* case. One element of the *prima facie* case can be met by establishing that either: (1) an adverse employment action was taken against the employee subsequent to engaging in protected activity or (2) the employee was subjected to severe or pervasive retaliatory harassment by a supervisor. *Garner*, 554 F.3d at 639. Fuhr claims that the district court only analyzed whether she was subjected to severe or pervasive retaliatory harassment and failed to address whether Defendant took an adverse employment action against her.

Indeed, the district court only addressed whether Fuhr was subjected to severe or pervasive retaliatory harassment by her supervisor, Hazel Park High's athletic director, Tom Pratt. The district court did this because, even though Fuhr correctly identified both ways of establishing the element, she only argued that she was subjected to severe and pervasive retaliatory harassment. Fuhr argued that "Defendants created a hostile work environment" through retaliatory acts and that "her supervisor, Tom Pratt, did engage in pervasive retaliatory harassment"; she concluded "that the retaliation was severe and pervasive and at the hands of her superiors." R. 98 at 34–35. Because Fuhr failed to argue to the district court that Defendant took an adverse employment action against her, she is precluded from raising such an argument on appeal. "This court will not decide issues or claims not litigated before the district court. . . . '[W]e review the

case presented to the district court rather than a better case fashioned after the district court's order.'" *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) (citations omitted).[3]

### D.     Defendant's Legitimate Nondiscriminatory Explanation of Actions

Even if we were to assume that Fuhr met her initial burden of establishing her *prima facie* case so that unlawful retaliation would be presumed, Defendant would successfully rebut the presumption of unlawful retaliation. Defendant has articulated legitimate nondiscriminatory reasons for the actions that Fuhr alleges collectively constituted an adverse employment action. A sampling of these actions, and Defendant's reasons for them, are as follows:

Defendant submits that Fuhr's removal as varsity girls basketball coach in June 2006 was in response to the ongoing litigation in the *MHSAA* case. Defendant sought to proactively make sure coaches were in place should the seasons need to be realigned. Fuhr argues that because the judgment in *MHSAA* did not become final until the Supreme Court's final denial of certiorari in 2007, Defendant had no legitimate reason to remove her as coach of both teams in 2006. Defendant's action was legitimate, however, because it would have been impractical for one coach to head both teams simultaneously if both the girls and boys seasons would indeed be played in the winter.

Fuhr's complaints regarding the placement of the ice machine in the football coach's office and the denial of permission to allow the varsity boys basketball team access to the football locker room are complaints about decisions that affected all non-football sports teams equally.

Fuhr's complaints that Defendant refused to pay for an athletic trainer to attend basketball practice and the denial of access to the gym at a specific time are acts that affected all of Hazel Park High's sports teams equally—Defendant provides trainers only

---

[3]We also note that on appeal Fuhr has not briefed the district court's finding that she was not subjected to severe or pervasive retaliatory harassment. We therefore conclude that she does not appeal this finding.

at games for budgetary reasons and all teams were denied access to the gym at Plaintiff's desired time because the City Recreation Center had already reserved the gym for that time.

Fuhr asserts Defendant inappropriately disciplined her best players. However, Defendant submitted evidence supporting the reasons behind the disciplinary actions.

Tom Pratt's lackadaisical completion of his duties—the untimely submission of the the order for the varsity boys basketball uniforms and irregular job evaluations—has affected all of Hazel Park High's teams and coaches. Defendant submits that Pratt has ordered uniforms late for other teams as well, such as the wrestling team. Defendant also concedes that although Pratt is supposed to evaluate all coaches under his supervision annually, he has been sporadic in his evaluation of all coaches, not just Fuhr. Therefore, these problems are not unique to Fuhr.

Finally, Fuhr grieves that Clint Adkins, the school board president, set up a room for community members to complain about her at the city's community center and that Tom Pratt did not inform her about a petition circulated by parents which called for her removal as varsity boys basketball coach. These complaints are meritless because Defendant could not suppress community members' free speech without raising First Amendment concerns with respect to impermissible viewpoint discrimination.

## CONCLUSION

Because Plaintiff is unable to meet her initial burden, we decline to address whether she would successfully shoulder her ultimate burden of proving pretext. The district court judgment is **AFFIRMED**.