NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0639n.06

No. 16-5255

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Dec 01, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LAWRENCE R. CLEMONS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| METROPOLITAN GOVERNMENT OF | ) | STATES DISTRICT COURT FOR THE |
| NASHVILLE AND DAVIDSON COUNTY, | ) | MIDDLE DISTRICT OF TENNESSEE |
| TENNESSEE, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:    DAUGHTREY, ROGERS, and COOK, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.    While employed by the Metropolitan Government of Nashville and Davidson County, Tennessee (Metro), Lawrence Clemons was not given the opportunity to apply for a supervisory position because it was not publicly posted. Clemons filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), claiming that Metro's decision not to consider him for the promotion was based on the fact that he is African-American. Eight months after Clemons filed his charge of discrimination with the EEOC, Metro assigned Clemons and a co-worker to move heavy furniture. Clemons filed a lawsuit against Metro, claiming that Metro's decision not to promote him was based on race and that Metro unlawfully retaliated against him after he filed a charge of discrimination

with the EEOC. The district court granted Metro's motion for summary judgment, which Clemons now challenges. We find no reversible error and affirm as to both claims.

Clemons worked in the Department of Public Works from 2007 through 2010, when he was transferred to Metro Water Services. On December 22, 2012, Metro Water hired a Caucasian man, Brady Rich, for the position of field crew supervisor. Metro Water had not listed the position as vacant and had not advertised it to current Metro Water employees. According to Metro Water, it had not done so because there was an immediate need for a field crew supervisor, and a departmental hiring freeze made it difficult to hire a civil-service employee quickly. Rather than go through the process of applying for an exception to the hiring freeze, Metro Water hired Rich as a "temporary non-civil service appointment." Such temporary appointments were for a maximum of one year and did not include sick leave, vacation leave, or holiday pay.

Clemons and his union representative protested Rich's appointment to John Kennedy, a Metro Water assistant director, and Rich's appointment was subsequently rescinded. Clemons received a letter stating that "Mr. Kennedy has recommended that we rescind the appointment and announce the position as a Civil Service promotional announcement. Due to the number of vacancies created by the retirement incentive program, a timeline for announcing this position is not yet established." On September 24, 2013, Clemons filed a *pro se* EEOC charge alleging that Metro had discriminated against him by denying him the ability to apply for the field-crew-supervisor position. However, Clemons did not indicate in the charge that he also wished to initiate proceedings with the Tennessee Human Rights Commission or any other state or local agency.

In May 2014, Clemons and a co-worker, Art Boissiere, were required to stop their usual job activities to move heavy furniture, including office equipment and filing cabinets allegedly weighing up to 400 pounds. Both men claimed injury while completing this task. Clemons filed a second EEOC charge, this time with the assistance of counsel, claiming that Metro required him to move the furniture in retaliation for the complaints he made regarding the field-crew-supervisor position.

The district court granted Metro's motion for summary judgment, after finding that Clemons's race-discrimination claim was time-barred and that Clemons failed to establish a *prima facie* case of retaliation. Clemons now appeals this decision.

We review a district court's grant of summary judgment *de novo*, and we will uphold summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003). We must view the evidence in the light most favorable to the non-moving party, but that party must set forth specific facts showing that there is a genuine issue for trial, rather than resting on mere allegations. *Id.*

"Before a plaintiff alleging discrimination under Title VII can bring suit in federal court, [he] must satisfy two administrative prerequisites: (1) by filing timely charges of employment discrimination with the EEOC, and (2) receiving and acting upon the EEOC's statutory notices of the right to sue." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (internal

quotations and citations omitted). An EEOC charge must be filed within 180 days after the alleged unlawful employment practice occurred, unless "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice," in which case the aggrieved individual must file a charge with the EEOC within 300 days. 42 U.S.C. § 2000e-5(e). Clemons filed his charge with the EEOC on September 24, 2013, which was more than 180 but less than 300 days after the December 2012 hiring of Rich. The district court found that Clemons "made no showing that he initiated proceedings with a state or local agency by any mechanism" and, therefore, found that Clemons's Title VII race-discrimination claim was time-barred.

On appeal, Clemons points out that he filed the original EEOC charge *pro se* and asks us, as he did the district court, to overlook the fact that he did not "typ[e] in the magical words 'Tennessee Human Rights Commission' at the top of his EEOC charge," an addition that would have extended the time to file the charge. In addressing this argument—that it would be unfair to hold a lay person filing a *pro se* EEOC charge to strict time limitations—the district court referred to the Supreme Court's pronouncement that "[b]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination" and that, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver*, 447 U.S. 807, 825, 826 (1980). The district court did not err in finding that Clemons's EEOC charge was not timely filed. As a result, the district court was prevented from reviewing the merits of his Title VII claim, as are we.

We can, however, review the district court's grant of summary judgment on Clemons's retaliation claim, which was set out in a separate (and timely) EEOC charge. To establish a *prima facie* case of retaliation under Title VII, Clemons must establish that: (1) he engaged in activity protected by Title VII; (2) the defendants knew that he engaged in this activity; (3) the defendant took an employment action adverse to him; and (4) there was a causal connection between the protected activity and the adverse action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Id.*

Satisfaction of the first and second elements was not contested in the district court. Clemons contended that the remaining elements also were satisfied, under a theory that Metro took an adverse employment action against him in May 2014 by requiring him to move heavy furniture, a task not included in his job description, and did so in retaliation for his having filed the September 2013 EEOC charge.

A plaintiff's burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context, and "the significance of any given act of retaliation will often depend upon the particular circumstances." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (explaining, for example, that failure to invite an employee to lunch could amount to an adverse employment action in certain circumstances). Clemons "need only show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laster v. City of Kalamazoo*, 746 F.3d 714, 719 (6th Cir. 2014) (internal quotations and citations omitted).

In granting Metro's motion for summary judgment, the district court found that Clemons had not satisfied this element, explaining that "[t]he requirement that an employee spend one or two days helping to move furniture also does not constitute an adverse employment action." It is very possible, however, that requiring an employee to stop performing typical job functions and instead perform difficult—and perhaps even dangerous—manual labor for a few days might very well dissuade that employee from filing a charge of discrimination. As noted in *Burlington Northern*:

> Common sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that [he] spend more time performing the more arduous duties and less time performing those that are easier or more agreeable. That is presumably why the EEOC has consistently found retaliatory work assignments to be a classic and widely recognized example of forbidden retaliation.

*Burlington N.*, 548 U.S. at 70-71 (internal quotations and citations omitted).

But even if Clemons could establish that the temporary reassignment in this case was sufficient to constitute an adverse employment action, that finding alone would not constitute retaliation unless he could also establish a causal connection between the protected activity and the adverse action. In this case, the district court found none, and neither do we.

"To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen*, 229 F.3d at 563. Clemons contends that a jury could conclude that a causal connection existed, based on the fact that Metro deviated from its normal protocol in tasking him with moving the furniture and that he, rather than other available employees, was required to move the furniture. Clemons's claim is weakened, however, by the fact that the adverse employment action occurred in May 2014,

eight months after he filed the September 2013 EEOC charge. "[W]hile temporal proximity alone cannot establish a causal connection, a lack of temporal proximity alone can be fatal to an attempt to establish a causal connection under circumstances such as these." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 676 (6th Cir. 2013). Clemons's claim is further weakened by the fact that he was not singled out to move furniture but was asked to undertake the assignment along with a co-worker, who Clemons does not allege participated in any form of protected activity.

In addition, the district court was correct in granting summary judgment in favor of Metro on the retaliation claim because Clemons ultimately failed to explain why Metro's legitimate reasons for asking him to move furniture were pretextual. "Should the plaintiff establish a *prima facie* case, a presumption of unlawful retaliation arises and the burden of production shifts to the defendant to rebut the presumption by articulating some legitimate, nondiscriminatory reason for its action." *Id.* at 674 (internal quotations and citations omitted). In a declaration from Ricky Swift, the Metro Water agent who assigned Clemons to move furniture, the following nondiscriminatory reason for this decision was summarized:

> The selection of Mr. Clemons and Mr. Boissiere was made because they were a two-member team that had been working on identifying problem bicycle grates, which, when called upon, would not involve breaking up a multi-member crew, and the bicycle grate program was on-going, and it would not lead to a critical situation if it was postponed for a day or so in order to complete this move (as opposed to the other crews which had multiple members and were working on more time sensitive jobs).

"If a defendant successfully produces such a legitimate reason, then the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination." *Fuhr*, 710 F.3d at 675. Clemons, however, does not explain how these proffered reasons were pretextual. Although Clemons need

not "present independent evidence that the proffered reason is pretext," *Sutherland,* 344 F.3d at 615, the facts relied upon in building his *prima facie* case—that there were other employees that could have been chosen, and that Metro deviated from its protocol—are not enough to establish that Metro's reasons were actually pretextual. As a result, the district court's decision to grant Metro's motion for summary judgment on Clemons's Title VII retaliation claim was proper.

For the reasons set out above, we AFFIRM the judgment of the district court.